# United States Court of Appeals
## For the First Circuit

————————————

No. 01-1202

CLAYTON R. SEAVEY,
Plaintiff, Appellee,

v.

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,
Defendant, Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

————————————

Before

Lynch, Circuit Judge,
Coffin, Senior Circuit Judge,
and Young,* District Judge.

————————————

Michael E. Kerpan, Jr., Assistant Regional Counsel, Social Security Administration, with whom Paula D. Silsby, United States Attorney, and James M. Moore, Assistant United States Attorney, were on brief for appellant.

————————

\* Of the District of Massachusetts, sitting by designation.

Joyce K. Mykleby for appellee.

_____

December 27, 2001
_____

**LYNCH, Circuit Judge**. This case raises an issue of importance in the law of this circuit on Social Security appeals. The issue is this: after an Administrative Law Judge ("ALJ") has erred, when is it appropriate for a court to remand for further proceedings and when is it appropriate to order payment of social security benefits? The Commissioner of the Social Security Administration[1] appeals from a district court order requiring the Commissioner to pay Clayton Seavey disability benefits, rather than conduct further proceedings, after the district court found that the Social Security ALJ had erred at Step 5 of the disability determination process. Seavey v. Apfel, No. 00-23-B (D. Me. Nov. 30, 2000). The Commissioner

---

[1]    In the district court proceedings, the defendant named was Kenneth S. Apfel, then Commissioner of Social Security. By the time this appeal was filed, Larry G. Massanari had become Acting Commissioner of Social Security and was the appellant in this case. After oral argument, Jo Anne B. Barnhart succeeded Acting Commissioner Massanari as the Commissioner of Social Security. Pursuant to F.R.A.P. 43(c), Commissioner Barnhart is substituted as the defendant appellant.

concedes that the ALJ decision was in error, but argues that the proper remedy was for the district court to remand the case to the Commissioner for further administrative proceedings. The district court disposed of the case based upon a rule it had established in a prior case, Field v. Chater, 920 F. Supp. 240 (D. Me. 1995), which adopted what appears to be either a per se or a preferential rule that when a court is faced with an error at Step 5, the appropriate remedy is an order that the applicant be paid the benefits sought. The issue raised here is also raised in another case we decide today, Freeman v. Barnhart, No. 01-1293 (1st Cir. 2001). We use this case to express the general principles for decision.

We affirm the district court's order of remand, but reverse the order for payment of benefits, and rule that, in this instance, remand to the Commissioner with instructions for further proceedings is the appropriate remedy.

## I.

The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income

program, which provides assistance for the indigent aged and disabled. 42 U.S.C. §§ 423, 1381a (1998). In July 1996, Clayton Seavey applied for benefits under both of these programs, claiming that pain relating to a back injury and heart problems rendered him unable to work. After his application was initially denied by the Commissioner and the Commissioner denied reconsideration, Seavey received a hearing before an ALJ on August 13, 1997.

When considering applications, the Commissioner employs a five step process to determine if an individual is disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.920 (2001). All five steps are not applied to every applicant, as the determination may be concluded at any step along the process. Id. The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that

-4-

he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted. Id.

Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). If the applicant's limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). "The Grid," as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the

individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R § 416.969. However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey was forty-three when he applied for benefits. His work history is that of an unskilled laborer; his education ended at seventh grade. At the ALJ hearing, Seavey presented medical evidence concerning his back pain and the degree of limitation it imposes on him. He also presented evidence in the form of an expert report from a psychologist, Dr. Greene. Dr. Greene's report stated that "Seavey appears to be a 'textbook example' of an individual with passive-aggressive personality disorder" who may also meet the diagnostic criteria for avoidant personality disorder, and that he tested at the borderline Verbal IQ range. Following the hearing, Seavey's attorney

-6-

submitted a letter from Dr. Greene,[2] along with psychological testing results, to clarify Dr. Greene's earlier findings, particularly her notation that Seavey had an elevated score on the "Work Interference" scale, indicating behavioral attributes that would negatively affect his ability to work. Dr. Greene's letter stated that Seavey may meet the diagnostic criteria for a Reading Disorder and that "he would have great difficulty performing any jobs that require much reading."[3] However, the letter also stated that Seavey's low IQ and reading ability, combined with his desire to get the testing over with quickly, meant that the Work Interference score might not be valid. Dr. Greene also noted that she had not observed any problems with Seavey's concentration, persistence, or pace during her

---

[2] At the close of the hearing, the ALJ indicated that he would keep the record open until September 10, 1997. The supplemental letter from Dr. Greene is dated September 4, 1997 and so we will assume that it was part of the record before the ALJ. It makes little difference to the outcome, as the most substantial evidence of a nonexertional limitation is found in the initial report.

[3] Even if Seavey were illiterate, however, that would not amount to a disability; nor is illiteracy considered to significantly limit the jobs available, even to those applicants who are physically limited to sedentary work. 20 C.F.R. pt. 404, subpt. P, App. 2, § 201.00(i).

interactions with him, and that she did not believe he would "decompensate on the job." In addition, records from one of Seavey's treating physicians indicate that he did not appear to have any problems in understanding, concentration, or persistence.

The ALJ found that Seavey is limited to "light work" by his back ailment. The ALJ's decision did not mention Dr. Greene's report and letter or any psychological evidence,[4] but simply found that Seavey "has no significant non-exertional limitations." The ALJ then used the Grid to find him to be not disabled. Seavey appealed to the Social Security Appeals Council, arguing that his mental and cognitive impairments were significant nonexertional limitations and therefore the Grid was not dispositive of his claim. Almost two years later, the Appeals Council denied his appeal.

Seavey then sought review in federal district court. The district judge assigned the case to a magistrate judge, who prepared a report and recommendation. As to the Supplemental Security Income claim, the magistrate judge found that the ALJ

---

[4] During the hearing, the ALJ, referring to Dr. Greene's initial report, noted that "[t]here's no evidence that there's anything of a disabling nature in his psychological profile in this report."

had erred by applying the Grid to Seavey after stating in the hearing that the psychological profile did not indicate anything of a "disabling nature." Seavey v. Apfel, No. 00-23-B, 2000 WL 1499277, at *2 (D. Me. Oct. 6, 2000). The correct question, the magistrate judge's report said, is not whether the nonexertional limitations are themselves disabling, but whether the nonexertional limitations significantly limit the applicant's ability to perform work at a given exertional level (in Seavey's case, "light" work). Id. If so, then the Grid is not dispositive. Id. The magistrate judge's report stated that the Commissioner bears the burden of proof at Step 5, and that when nonexertional limitations have more than a marginal effect, the Commissioner must present testimony from a vocational expert. Id. at *3. Finally, the magistrate judge's report recommended that the district judge order the Commissioner to pay Supplemental Security Income benefits to Seavey.[5] Id. Although the magistrate judge's review of the ALJ's decision was to

_____

[5]     The magistrate judge recommended affirmance of the denial of Seavey's application for Social Security disability benefits because Seavey had not demonstrated he was disabled on or before December 31, 1995, the last date that he was covered by Social Security disability insurance. Seavey, 2000 WL 1499277, at *2. There has been no appeal from that determination, so the SSD claim has been abandoned.

-9-

determine whether substantial evidence supported the findings of the ALJ, Ward v. Commissioner of Social Security, 211 F.3d 652, 655 (1st Cir. 2000), the district court's review of the magistrate judge's decision is de novo as to objections raised. 28 U.S.C. § 636(b)(1)(C) (1994).

The district judge agreed with the magistrate judge's report and, in a one paragraph order, vacated the ALJ decision and ordered the Commissioner to pay benefits to Seavey.

II.

The Commissioner argues that, although the ALJ erred in not discussing the evidence of psychological impairment, the evidence, including Dr. Greene's report, did not necessarily establish the existence of a significant nonexertional limitation. Therefore, the Commissioner says, the ALJ's opinion could have been affirmed in its current state on the assumption that the ALJ had implicitly discredited Dr. Greene's letter and report. This argument is not persuasive because, although "a nonexertional impairment can have a negligible effect," ordinarily the ALJ "must back such a finding of negligible effect with the evidence to substantiate it," Talbot v. Heckler, 814 F.2d 1456, 1465 (10th Cir. 1987), unless the matter is self-evident.

Alternatively, the Commissioner argues that the proper remedy would be a remand for further administrative proceedings. She argues that a remand with an order to pay benefits is only appropriate where the evidence shows a "virtually certain entitlement to benefits."

The Commissioner further maintains that this magistrate judge has a policy of remanding with an order to pay benefits, rather than remanding for further administrative proceedings, whenever it finds an error at Step 5 in the process.[6] Counsel for Seavey disputed that point at oral argument. The magistrate judge, in his Report and Recommendation for this case, relied upon his reasoning in a previous case, Field v. Chater, 920 F. Supp. 240 (D. Me. 1995), cited in Seavey, 2000 WL 1499277, at *3. In Field, the magistrate judge wrote that "[w]hen the Commissioner had a full and fair opportunity to develop the record and meet her burden at Step 5, there is no reason for the court to remand for further factfinding." Field, 920 F. Supp.

---

[6]    The Commissioner also argues that, in this case, the ALJ error was actually in Step 4, not Step 5, as nonexertional limitations are a component of the applicant's "residual functional capacity," which is determined at Step 4.  We do not see how this technicality would affect the outcome of the case -- particularly since the denial of benefits occurred at Step 5 -- and therefore, we will not address this issue.

at 243. The opinion in Field distinguished that case from a decision of this court, Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994), in which we remanded for further proceedings because the ALJ's error in applying the Grid at Step 5 meant that the vocational expert had not been asked the proper questions about a nonexertional limitation. Field, 920 F. Supp. at 243. The opinion in Field emphasized that "where the problem is . . . the more fundamental problem of insufficient evidence on an issue for which the Commissioner carries the burden," further proceedings are not warranted. Id. at 243. In this case, the magistrate judge looked no further than the Field case to conclude that "the [C]ommissioner's failure to carry his burden at Step 5 requires remand for payment of benefits," Seavey, 2000 WL 1499277, at *3, without analyzing the differences between the cases.

Seavey responds that the Commissioner is simply being held to the same standard as any other litigant in any other case -- if he does not meet his burden, then an order to pay benefits is appropriate. He claims that "[t]he Secretary who has the benefit of institutional expertise and a huge federal bureaucracy in effect argues that no matter how egregious the

error they must be given one chance after another to remedy their mistake unless the record demonstrates with <u>virtual certainty</u> that the applicant will win on remand."  In essence, Seavey  argues that the Commissioner wants an impermissible second bite at the apple.

The premise of Seavey's position is that the Commissioner should be treated like any other <u>litigant</u> and that remanding and allowing new evidence would be giving the Commissioner an unfair advantage.  The premise is not entirely correct.  Because of the nonadversarial nature of Social Security disability determinations, the Commissioner is not a litigant and has no representative at the agency level.  Indeed, the model is investigatory, or inquisitorial, rather than adversarial.  <u>Sims</u> v. <u>Apfel</u>, 530 U.S. 103, 110 (2000).  It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits. <u>Id.</u>  At the ALJ level, the applicant is the only <u>litigant</u> presenting evidence.  While the agency may have already generated evidence and the ALJ may generate more -- for example, by sending the applicant for a consultative exam or by calling a medical or vocational expert -- these experts function as

consultants in the adjudicative process, assisting the ALJ in determining what the outcome should be. They are not experts retained in an effort to shore up an agency's litigation position. That is because, until the ALJ renders a decision on whether an applicant is disabled or not, the agency has not taken a final position. Consequently, when an ALJ improperly concludes that a nonexertional impairment has no significant impact on residual functional capacity, that is an adjudicator making a mistake, not a party litigator failing to present evidence.

## III.

### Standard of Review

Judicial review of Social Security administrative determinations is authorized by 42 U.S.C. § 405(g) (1994). Both the fourth and sixth sentences of this subsection grant federal courts the power to remand cases to the Commissioner. The fourth sentence of this subsection states that a reviewing court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The

-14-

sixth sentence states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  Id.  As discussed below, we view this case as governed by the fourth sentence of § 405(g).  See Sullivan v. Finkelstein, 496 U.S. 617, 625-26 (1990); see also Shalala v. Schaefer, 509 U.S. 292, 296-97 (1993).

Our review of a district court's decision to affirm or reverse a final decision of the Commissioner is de novo and we use the same standard to review the correctness of the Commissioner's decision as does the district court:  that is, whether the final decision is supported by substantial evidence and whether the correct legal standard was used.  42 U.S.C. § 405(g); Ward, 211 F.3d at 655.  Questions of law are reviewed de novo, both by the district court and by this court.  Id.; Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000).  Since the district court appears to have adopted a rule of law as to disposition on remand, our review of this rule is de novo.

-15-

Some of our sister circuits have held that, although district court decisions reversing or affirming a decision of the Commissioner are reviewed de novo, a district court's decision as to whether to remand for proceedings or order payment once an error has been found should be reviewed only for abuse of discretion. See Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Nelson v. Apfel, 210 F.3d 799, 801-02 (7th Cir. 2000). Seavey has urged us to adopt this approach, and the Commissioner has not contested this point before us.[7]

However, we find that the decision as to what remedy to apply under sentence four of § 405(g) is largely dictated by the type of error made by the ALJ or Commissioner, as discussed below, and therefore is not, for the most part, a matter of discretion. Unlike in appeals where the district court has acted as the trial court, the district court here has no

[7]    We note that, in many of the cases holding that abuse of discretion is the proper standard of review, the deferential standard benefitted the Commissioner, as the district court had ordered further proceedings upon remand and the applicant was seeking an order for immediate payment. See Higgins, 222 F.3d at 505; Harman, 211 F.3d at 1174; Nelson, 210 F.3d at 801.

-16-

institutional advantage over this court.  The district court reviews the same cold administrative record as do we, applying the same "substantial evidence" test.  The First Circuit has never recognized any distinction between the scope of a district court's review of Social Security determinations and the scope of appellate review.  See, e.g., Ward, 211 F.3d at 655; Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); Splude v. Apfel, 165 F.3d 85, 88 (1st Cir. 1999).  Similarly, under the Administrative Procedure Act, courts of appeals directly review the administrative action and use the same standard of review as the district court.  Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 674 (1st Cir. 1998).  We are not convinced that we should now create an exception to this general rule for cases challenging the remand instructions when the Commissioner or ALJ has erred. Therefore, we review de novo the district court's decision to order payment.[8]

---

[8]    Even if we were to apply the abuse of discretion standard, the result would be the same in this case.  The district court's rule that an order for payment is appropriate whenever the Commissioner has failed to disprove disability at Step 5 is an erroneous interpretation of the law; abuse of discretion review encompasses errors of law.  See United States v. Davis, 261 F.3d 1, 21 (1st Cir. 2001).

IV.

Remedy Upon Remand

Applying our standard of review here, we hold that the district court committed error by remanding with instructions to pay. Such a result is inconsistent with our precedent and an unnecessary abrogation of the Commissioner's authority to adjudicate applications for disability benefits.[9]

---

[9] Before addressing the remedial issue, we pause to note another issue argued by the parties. The magistrate judge assumed that at step 5 the Commissioner bears the burden of proof, which influenced the magistrate judge's recommendation for disposition. Seavey, 2000 WL 1499277, at *3. There is, however, some dispute over who bears the burden of proof at the fifth step of the disability determination process. At the fifth step, the Commissioner bears some type of burden to come forward with evidence showing that there are jobs that the applicant can perform despite his limitations. However, the parties dispute whether this is a burden of proof or merely a burden of production. In a sense, this discussion relies on a series of misnomers, as the Commissioner is not actually represented as a litigant. It may be better to think of this not as a shifting of burdens, but rather as a rule providing that the applicant is not under any obligation to produce evidence at Step 5.

This is not a new debate, see Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979), but there continues to be no clear answer within appellate case law. In the First Circuit, our terminology has not been entirely consistent. Compare Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991) (per curiam) (referring to Agency's "burden of proof"), with Torres v. Sec'y of Health & Human Servs., 677 F.2d 167, 168 (1st Cir. 1982) ("burden . . . of showing"), Arocho, 670 F.2d at 375 ("burden of coming forward with evidence"), and Geoffroy v. Sec'y of Health

The question of remedy is tied to the strictures of §

405(g): "the findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). Hence, the responsibility for

weighing conflicting evidence, where reasonable minds could

differ as to the outcome, falls on the Commissioner and his

designee, the ALJ. Walker v. Bowen, 834 F.2d 635, 639-40 (7th

Cir. 1987). It does not fall on the reviewing court. The

question of what instructions should accompany a remand order

will turn on the nature of the error at the ALJ proceedings.

---

& Human Servs., 663 F.2d 315, 317 (1st Cir. 1981)
("responsibility to establish").
    In most cases involving review of Social Security
administrative determinations, the distinction between a burden
of proof and a burden of production will be meaningless, as our
inquiry into the evidence (like that of the district court) is
limited to a determination of whether the Commissioner's
decision was supported by substantial evidence. Miranda v.
Sec'y of Health, Educ. & Welfare, 514 F.2d 996, 998 (1st Cir.
1975). It is possible in some case that the Commissioner's
burden may have some relevance in determining whether further
proceedings are appropriate. Nonetheless, in this case, it is
not determinative. The only evidence introduced by the
Commissioner at Step 5 was the Grid, which was insufficient as
a matter of law to deny benefits, given that Seavey had
introduced evidence to support his claim that nonexertional
limitations significantly limited his ability to work. Rose,
34 F.3d at 19; Heggarty, 947 F.2d at 995-96; 20 C.F.R. §
416.969a.

Here, the Commissioner agrees that the ALJ was in error because the ALJ ignored relevant and material evidence. The reports were relevant to show that Seavey had nonexertional limitations that could significantly impair his ability to perform the full range of light or sedentary work and, hence, that reliance on the Grid was inappropriate. Rose, 34 F.3d at 19; Heggarty, 947 F.2d at 995-96; 20 C.F.R. § 416.969a. The Commissioner says that ordinarily in cases with this sort of error, she would have voluntarily sought remand to the ALJ. The Commissioner did not do so here because, in the Commissioner's view, the court can review the record and decide that the only reasonable conclusion is that Seavey has not shown that any nonexertional limitation significantly affects his ability to perform light work, and therefore he is not disabled. But, the Commissioner says, if the court does not agree that this is the only reasonable conclusion, then we should send the matter back for further proceedings.

Thus, we are confronted with a case where the ALJ did not make any findings on a key issue -- whether Seavey has a significant nonexertional impairment. As a result, there was no evidence introduced on a second, subordinate issue; if the ALJ

-20-

had found that Seavey had a significant, nonexertional limitation, he would have then progressed to a finding of whether the combined exertional and nonexertional impairments rendered Seavey unable to perform a significant number of light or sedentary jobs. Seavey does not advance the argument before this court that the record, as it currently stands, conclusively shows that he is disabled under the meaning of the statute. That would require vocational evidence to establish whether there are jobs he could perform, given his combined exertional and nonexertional limitations. Heggarty, 947 F.2d at 996. Instead, Seavey maintains that the Commissioner is to blame for the insufficiency of the record, as the Commissioner failed to call a vocational expert to testify at the hearing, and therefore she need not be given a second chance through further proceedings.[10]

Such an approach, however, is not consistent with the dictates of § 405(g) or with the approach generally taken when reviewing administrative actions. Instead, the rule we adopt is

_____

[10] This was not Seavey's original position before the district court. Originally, he sought only a remand for further proceedings, but the magistrate judge suggested he request an order to pay instead.

that ordinarily the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits. Put differently, if the evidence and law compelled one conclusion or the other, then the court could order an award of benefits or affirm a denial of benefits. For example, a judicial award of benefits would be proper where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence. See Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985). Similarly, if correcting the legal error clarified the record sufficiently that an award or denial of benefits was the clear outcome, then the court may order payment or affirm denial. Conversely, if an essential factual issue has not been resolved, as here, and there is no clear entitlement to benefits, the court must remand for further proceedings.[11] A number of circuits appear to have adopted this

---

[11] If the district court remands to the agency for further proceedings where the applicant has sought payment of benefits and has requested a remand for further proceedings only as an alternative remedy, the applicant may appeal that remand order to this court. Forney v. Apfel, 524 U.S. 266, 271 (1998).

-22-

view.  See Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001) ("[A] remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits."); Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994) (improper for district court to award benefits where there is conflicting evidence as to the severity of applicant's impairment); Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) ("This court . . . [may] remand the case for an entry of an order awarding disability benefits where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."); see also Nielson v. Sullivan, 992 F.2d 1118, 1122 (10th Cir. 1993) (remand with order to pay where passage of time had placed applicant in an older age group, making award a foregone conclusion); K.C. Davis & R.J. Pierce Jr., 2 Administrative Law Treatise 163-64 (3d ed. 1994) (adopting test but adding requirement that the court conclude that further delay would harm the applicant).

This rule also is consistent with the general rules for judicial review of administrative action.  When an agency has

not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency. <u>Fla. Power & Light Co.</u> v. <u>Lorion</u>, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

The district court's and the magistrate judge's decisions rest, in part, on the erroneous conclusion that the Commissioner would not be able to supplement a record upon remand, absent a showing of "good cause" for failure to introduce the necessary vocational evidence at the ALJ hearing, and therefore a remand would not serve any purpose. <u>See</u> <u>Field</u> v. <u>Chater</u>, 920 F. Supp. 240, 244 (D. Me. 1995). However, this reasoning depends on two incorrect assumptions. First, it assumes that additional evidence is definitively needed. Additional evidence would only be necessary in this case if the ALJ determines that Seavey's evidence indicates a significant nonexertional limitation.[12]

---

[12] At this stage, we make no determination as to whether an ALJ finding that the evidence was sufficient to show a significant nonexertional limitation, or a finding that the evidence was not sufficient to show a significant nonexertional limitation, would meet the "substantial evidence" test.

Without that preliminary finding, we cannot know whether the denial of benefits can withstand the lack of vocational evidence.

Second, the magistrate judge's and district court's reasoning assumes that good cause is a requirement for introducing new evidence in a sentence four remand. The "good cause" concept is derived from the sixth sentence of § 405(g), quoted above. Field, 920 F. Supp. at 244. The magistrate judge's recommendation also relies on older Second Circuit precedent, which also employs the "good cause" reasoning in determining when orders to pay are appropriate. Id. at 242 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983)). However, this reasoning erroneously combines two separate grants of remand power contained within § 405(g) -- that granted by the fourth sentence and that granted by the sixth sentence. Since the Second Circuit decided Carroll, the Supreme Court has made clear that the sixth sentence of § 405(g) and the fourth sentence of § 405(g) are two distinct grants of remand power, which apply in two distinct situations. Shalala v. Schaefer, 509 U.S. 292, 297-301 (1993); Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Sentence six

-25-

and its "good cause" limitation come into play only "when the district court learns of evidence not in existence or available to the applicant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Finkelstein, 496 U.S. at 626. Sentence six has been referred to as a "pre-judgment remand," employed where the federal court has not ruled on the validity of the Commissioner's position, while sentence four has been referred to as a "post-judgment remand." See Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994). This case is clearly governed by sentence four and therefore the "good cause" restriction of sentence six does not apply.

Unlike sentence six, sentence four does not contain any statutory limits on the ability to supplement the record on remand. Nonetheless, we do not rule out the possibility of some constraints in unusual cases. In some Social Security cases, for example, the delay in final disposition of claims may, at times, make requests by the Commissioner for additional proceedings a matter of some concern. Many Social Security applicants are represented by non-lawyers or have no

representation at all, and most are indigent.[13]  Some circuits

have exercised what we view as a form of equitable power to

order benefits in cases where the entitlement is not totally

clear, but the delay involved in repeated remands has become

unconscionable.  E.g., Morales v. Apfel, 225 F.3d 310, 320 (3d

Cir. 2000) (remanding for payment of benefits in light of

"substantial evidence" of a severe mental disability and

"considerable inexplicable delays" resulting in passage of ten

years since application).  In such cases, our sister circuits

have warned the Commissioner that administrative deference does

not entitle the Commissioner to endless opportunities to get it

right.[14]  See, e.g., Miller v. Chater, 99 F.3d 972, 978 (10th

---

[13]     Moreover, as representatives are commonly paid for their advocacy during the agency adjudication with a percentage of the lump sum retroactive benefit payment that applicants receive when their applications are approved, see 42 U.S.C. § 406(a)(2)(A) (1994), there is little financial incentive for the agency or the representative to expedite agency proceedings.  We do note that the  Equal Access to Justice Act, under which the Commissioner may be compelled to pay the attorney's fees and expenses of successful applicants, Schaefer, 509 U.S. at 302-03, provides an incentive to the agency not to take unreasonable positions on appeal.

[14]     At the same time, the Supreme Court has noted that Congress was fully aware of the serious delays in resolution of disability claims, yet declined to impose deadlines; as a result, the Court vacated an injunction imposing a flat deadline.  Heckler v. Day, 467 U.S. 104 (1984).

Cir. 1996) (remanding for fifth administrative hearing, but cautioning "the agency that the Secretary is not entitled to adjudicate a case ad infinitum until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion.") (internal quotations omitted). This, however, is not such a case, and we need not decide the extent of any such equitable limits here. In this case, we leave the question of additional evidence to the discretion of the ALJ, based on his resolution of the conflicting evidence of nonexertional impairments.

Accordingly, the order for payment of benefits is <u>vacated</u> and the case is <u>remanded</u> with instructions to remand to the Commissioner for further proceedings not inconsistent with this opinion.