# United States Court of Appeals
## For the First Circuit

No. 19-1712

AMANDA SACILOWSKI,

Plaintiff, Appellee,

v.

ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., Chief U.S. District Judge]

Before

Thompson, Stahl, and Barron,
Circuit Judges.

Aaron L. Weisman, U.S. Attorney, with whom Michael J. Pelgro, Regional Chief Counsel, Social Security Administration, and Lisa G. Smoller, Special Assistant U.S. Attorney, Social Security Administration, Office of the General Counsel, were on brief, for appellant.
Stephen P. Maguire was on brief for appellee.

May 15, 2020

**THOMPSON**, **Circuit Judge**.  Andrew M. Saul, Commissioner of Social Security, appeals the district court's order 1) finding that Amanda Sacilowski is disabled as defined under 20 C.F.R. § 404.1520 and therefore 2) awarding her benefits.  Both parties rely heavily on this court's decision in Seavey v. Barnhart, 276 F.3d 1 (1st Cir. 2001); the Commissioner to argue that like in Seavey, the court should remand the case as "essential factual issue[s] ha[ve] not been resolved."  Id. at 11.  While Sacilowski contends no factual issues need further resolution, and that this is the "unusual case" the court in Seavey described "where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence," such that an award of benefits would be proper.  Id.  We now review the record on a clean slate to determine whether there is "overwhelming" or "very strong" evidence of Sacilowski's disability, without any "contrary evidence," id., to justify an award of benefits.  We find that there is, and so we affirm.

### BACKGROUND

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for the indigent aged and disabled."  Id. at 5 (citing 42 U.S.C. §§ 423, 1381a).  A claimant seeking

disability benefits must prove that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also § 1382c(a)(3)(A). Once a claimant applies for benefits, the Social Security Act provides that the Commissioner's factual determinations of an entitlement to benefits "shall be conclusive" if the findings are "supported by substantial evidence." 42 U.S.C. § 405(g).

Sacilowski was 34 years old when she filed applications for Social Security Disability Benefits and Supplemental Security Income on June 23, 2015. She is a high school graduate and has not worked since 2012. Before that, she worked as a customer service representative for two different banks and then for a children's retail company, the latter of which required her to answer calls and retrieve certain physical items from inventory on occasion. She was released from that last job due to her health issues.

The Commissioner denied Sacilowski's applications, and on January 20, 2016, Sacilowski requested that an Administrative Law Judge ("ALJ") make an independent assessment of her claim. An ALJ employs a five-step test to determine if an individual is disabled within the meaning of the Social Security Act. 20 C.F.R.

§ 416.920. The test asks questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted: (Step 1) whether the claimant is currently engaging in substantial gainful activity; if not, (Step 2) whether the claimant has a severe impairment; if so, (Step 3) whether the impairment meets or medically equals an entry in the Listing of Impairments; if not, (Step 4) whether the claimant's residual functional capacity ("RFC") is sufficient to allow her to perform any of her past relevant work; and if not, (Step 5) whether, in light of the claimant's RFC, age, education, and work experience, she can make an adjustment to other work available in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v) (2012). A claimant bears the burdens of production and persuasion at steps one through four. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At step five, the Commissioner must come forward with evidence of jobs in the national economy that the claimant is able to perform. Id. (citing Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)).

At the ALJ hearing on September 30, 2016, Sacilowski, Sacilowski's husband, and an impartial Vocational Expert ("VE") testified. Sacilowski spoke about her background, work history, and medical conditions preventing her from working. The latter focused on her migraine headaches and bladder ailments. She

- 4 -

explained that she experienced two to three migraines a week and described the incapacity her migraines generated and the treatment she was receiving at the time. As to her bladder ailments, she testified about the pain she experienced while urinating, the treatment she received for the pain, and that starting about three to four months before the hearing, she was urinating so frequently that she kept a "commode at the foot of [her] bed just in case she [couldn't] make it up the stairs to use the restroom [at home]."

Sacilowski's husband corroborated her testimony. The VE then explained that someone with Sacilowski's impairments could work in jobs involving "light cleaning," "sales," and "general office" work. He then testified about the ramifications of frequent absenteeism on the ability to hold down "full-time competitive employment":

> **[ALJ]**: And if a hypothetical Claimant is unable to tolerate customary work pressure, this would be with absences of at least four times per month, would that restriction, would that rule out all full-time competitive employment?
> **[VE]**: Yes, it would.
> **[ALJ]**: What would be the cut off for absenteeism that's accepted by the employers.
> **[VE]**: Once a month, and that's problematic in terms of maintaining a job.
> **[ALJ]**: And if someone's unable to sit, stand or walk for eight hours total over an eight hour work day, obviously that precludes full-time employment is that correct?
> **[VE]**: Correct, Your Honor.
> **[ALJ]**: And if someone had to lay down with their legs up to at least waist level between two and four hours in an eight hour work day,

and then be off-task in that time period, would that preclude full-time competitive employment?

**[VE]**: Yes, it would.

Before rendering a decision, the ALJ also reviewed various documents: Sacilowski's earnings records and work history, her medical records ranging from 2013 to 2016, including multiple records from her treating physician, Dr. Wilson, and the state agency physicians' evaluations of the record evidence.[1]

Ultimately, the ALJ concluded that Sacilowski's bladder ailments were "non-severe" at Step 2, because they had "been managed with medication with no ongoing, secondary functional limitations that would cause more than a minimal effect on her ability to perform basic, work-related tasks for a period of twelve months or more." He found Sacilowski's migraines (and fibromyalgia and depression) to be "severe" impairments (Step 2), but that these "severe" impairments did not "meet the severity listing" of a listed impairment, and so Sacilowski had the RFC to perform a limited range of light work (Step 3), as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] although not any past relevant work (Step 4).

---

[1] We offer more on these documents later in the discussion when we detail the evidence of Sacilowski's impairments.

[2] The Commissioner conceded that the ALJ erred at Step 3 when he determined that Sacilowski's migraines could not meet the

The ALJ therefore moved onto Step 5, and relying on the VE's testimony about what jobs would be available to someone with Sacilowski's impairments, determined that Sacilowski could perform certain jobs in the national economy, such as cleaning, sales, or general office work. The ALJ noted that even though Sacilowski's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms . . . ,[her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Therefore the ALJ agreed with the Commissioner's decision to deny benefits, finding that Sacilowski was not disabled as defined under the Social Security Act between March 25, 2015, the alleged onset of disability, to December 20, 2016, the date of the ALJ decision ("Relevant Time Period").

Sacilowski requested review of the ALJ's decision by the Appeals Council, which the Appeals Council denied. This cleared the way for Sacilowski to file a complaint on January 2, 2018 in federal court challenging the ALJ's findings.

District Court Judge McConnell referred the case to Magistrate Judge Almond, who reviewed Sacilowski's motion to

---

severity of an already-listed impairment. Because our decision will remedy any impact of this error, we need not address it.

reverse the Commissioner's decision and the Commissioner's motion to affirm, and then held a hearing during which he asked each side's attorney to present their two strongest arguments. Sacilowski's attorney explained that his client's bladder condition was still developing and worsening at the time of the ALJ hearing, and there wasn't enough medical evidence in the record to make a proper decision on its severity. He also argued that the ALJ should have found that the frequency and severity of Sacilowski's migraines would cause Sacilowski to be absent from work at least once a month, and therefore preclusive of full-time employment, as explained by the VE to the ALJ. What underscored both these arguments was Sacilowski's attorney's complaint that the ALJ did not give Dr. Wilson's opinions enough weight. On the other side, the Commissioner argued that there was support in the record to render Sacilowski's bladder ailments not severe and that the ALJ was correct to find that Sacilowski's migraines were stable and would not interfere with her ability to do the work suggested by the VE. The Commissioner also noted that Dr. Wilson's opinion was unreliable as inconsistent with his treatment notes.

With this, the magistrate judge issued a Report & Recommendation ("R&R") finding that substantial evidence did not support the ALJ's denial of benefits, and therefore recommended reversing the Commissioner's decision and remanding the case to the ALJ for further development of the facts related to

Sacilowski's medical impairments, in particular her migraines and bladder condition, and their impact on Sacilowski's potential absenteeism. The magistrate judge found that the ALJ had "not directly address[ed] Dr. Wilson's opinion regarding [Sacilowski's] probable absenteeism, or [her] self-reports and the medical records documenting multiple migraine headaches per week," and although the ALJ "discuss[ed] some of this evidence," he "never directly addresse[d] the credibility of the reported frequency or the impact of such migraines on [Sacilowski's] attendance and ability to sustain fulltime employment." To that end, he noted that although the "state agency consulting physicians had access to the majority of medical records documenting [Sacilowski's] migraine history, they completed a physical RFC assessment that did not specifically assess the issue of absenteeism." As to Sacilowski's bladder ailments, the magistrate judge found that the ALJ's determination that they were "non-severe" was based on opinions from state agency physicians rendered on October 20, 2015 and January 6, 2016, even though it was "undisputed that [Sacilowski's] bladder issues required ongoing treatment throughout 2016." He therefore recommended that the "updated medical evidence should be further evaluated by a medical expert to determine if the bladder conditions meet the Step 2 severity threshold and duration requirement, and for further consideration

of the functional limitations arising out of [Sacilowski's] urinary issues."

On March 29, 2019, Sacilowski filed a limited objection to the magistrate judge's R&R, requesting that benefits "be awarded on the record as it stands," or "that the remand order include a direction that it be assigned to a different ALJ." The Commissioner filed no objection.

This next went to the district court, which agreed with the magistrate judge's findings, but diverted on the final outcome, where it bypassed the need for further fact-finding and instead on April 8, 2019, found Sacilowski "disabled and awarded benefits." The Commissioner filed a motion for reconsideration; the district court denied this, stating that the record and law fully supported its finding in favor of Sacilowski. The Commissioner timely appealed, asking this court to reverse the district court's judgment and order that reversed the Commissioner's decision and awarded Sacilowski benefits, and "remand[] for further administrative proceedings."

After oral argument in this appeal, we remanded the case to the district court for elaboration on its findings, to enable our "meaningful appellate review," Supermercados Econo, Inc. v. Integrand Assurance Co., 375 F.3d 1, 3 (1st Cir. 2004), and the district court entered a fleshed out order on February 12, 2020. The district court explained that the ALJ had

failed to adequately account for limitations related to [Sacilowski's] migraines and bladder problems in her [RFC] Assessment. Specifically, the ALJ failed to address the issue of absenteeism by [Sacilowski] due to the frequency and impact of migraines on her as documented by her treating primary care physician [who] . . . opined that [Sacilowski's] symptoms would be severe enough to cause more than four absences from work per month and the Vocational Expert . . . testified at a hearing before the ALJ that absences of four times a month would rule out full-time competitive employment. Without good cause, the [ALJ] did not give substantial weight to this evidence. A remand was thus unnecessary as the evidence before the ALJ established that [Sacilowski] was disabled and entitled to benefits.

Order at 2, <u>Sacilowski</u> v. <u>Saul</u>, No. 18-CV-0001-JJM-LDA (D.R.I. Feb. 12, 2020). The parties submitted supplemental briefs in response to this district court order.

On appeal, the parties do not dispute that a remand is necessary. But they dispute what should happen upon remand: whether, as the Commissioner argues, the ALJ should be required to conduct further fact-finding into Sacilowski's alleged disability, or, as Sacilowski urges, the Commissioner should award Sacilowski benefits for the Relevant Time Period. The Commissioner contends that the district court did not have the "overwhelming evidence" needed to support a finding of disability and award benefits, and therefore unresolved factual issues warrant further development on remand. In particular, he argues that "there [i]s conflicting evidence in the record regarding Sacilowski's migraines," evidence

- 11 -

on the severity of the bladder ailments requires "further development," and Dr. Wilson's opinion contained "little specific support or explanation for his extreme opinion."

Sacilowski responds that there was "overwhelming evidence" to support the award of benefits and seeks affirmance of the district court's order.[3] Sacilowski relies on testimony from the ALJ hearing, Dr. Wilson's opinions, and medical reports on her migraines and bladder ailments. Sacilowski argues that the ALJ erred in finding that she could work despite the severity and frequency of her migraines and her bladder ailments were not severe based on the outdated RFC determinations.

## STANDARD OF REVIEW

We now dig into the parties' arguments and the full record before us, reviewing the district court's reversal de novo, and "use the same standard to review the correctness of the Commissioner's decision as does the district court: that is, whether the final decision is supported by substantial evidence and whether the correct legal standard was used." Seavey, 276 F.3d at 9 (citing 42 U.S.C. § 405(g)); see also Ward v. Comm'r of Social Security, 211 F.3d 652, 655 (1st Cir. 2000). We

---

[3] Sacilowski argues, in the alternative, that if this court remands for further fact-finding by an ALJ, it should reassign the case to a different ALJ. Because we affirm the district court's award of benefits, this point is moot.

> determin[e] whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence[;] . . . [t]he ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.

Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citation omitted).

Under the Social Security Act, courts are empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); Seavey, 276 F.3d at 8-9; Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) ("[E]very Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits" (awarding benefits and citing Seavey and comparable cases from other circuits)). "Courts have generally exercised this power when it is clear from the record that a claimant is entitled to benefits." Garrison, 759 F.3d at 1019; see also Seavey, 276 F.3d at 11-12.

## OUR TAKE

We find that there is ample evidence in the record, particularly related to the severity and frequency of her migraine

- 13 -

headaches and worsening bladder ailments,[4] to render Sacilowski disabled for the Relevant Time Period and justify an award of benefits.

We start with the migraine headaches. To the ALJ, Sacilowski testified that she experienced migraine headaches two to three times a week and upon onset they lasted "a day and a half or so" and caused her to "stay in [her] room . . . put something over [her] eyes, [and] lie down" each time. She explained that they became so severe that, towards the end of 2014, she had been prescribed Botox injections for relief. And Sacilowski's medical records confirm this. They show that she was experiencing chronic migraines as early as March 2014. At an appointment with a neurologist in September 2014, she reported severe migraine headaches that occurred "20-25x per month . . . [sometimes] multiple headaches in the same day, but sometimes one per day," and "about 4x per month" they could last from "a few hours up to 3 days," and would leave her immobilized. Her severe migraines at that time were accompanied by nausea and sensitivity to light and exertion. Her medical records confirm that in January 2015, she was receiving Botox shots for her migraines, but they were yet to

---

[4] While we find the severity and frequency of Sacilowski's migraine headaches on their own enough to render Sacilowski disabled during the Relevant Time Period, we include a discussion of her deteriorating bladder ailments which were progressively making her overall condition worse during the same time frame.

- 14 -

be effective.  As of July 21, 2015, Dr. Griffith, a neurologist, noted that Sacilowski was experiencing three to four migraines per week and that "she had Botox in May and it [had] helped some." Dr. Griffith shared this finding with Dr. Wilson, Sacilowski's treating physician, describing the migraines as "frequent, chronic and refractory."  On August 12, 2015, Sacilowski followed up with Dr. Wilson and reported that her migraines were "down since starting Botox," and Dr. Wilson described her migraines as "stable."  As of February 16, 2016, she reported to Dr. Wilson that her "migraines [were] about the same, meds had been adjusted, still getting [B]otox per routine at neuro."  On March 23, 2016, neurologist Dr. Gordon noted that Sacilowski's "headaches seem to get better for about two and half months after Botox, but the last two weeks [had] been quite difficult for her with migraines every day," and in fact she had a migraine on the day of that visit to Dr. Gordon.  And in a report on August 3, 2016, another neurologist, Dr. Hickey, noted that the Botox "helps [Sacilowski] – gets headache 2-3 migraines a week on this" and that the "headaches had not changed in quality."

Sacilowski also testified to the ALJ about her bladder ailments, including difficult-to-manage frequency and urgency related to, and pain while, urinating.  She testified that she endured "bladder injections" every two weeks for the pain from Dr. Rardin, a urogynecologist, who had been treating her since March

2016.  And her medical records confirm not only this testimony, but that her bladder ailments were plaguing her as early as May 2015.  On a visit to Dr. Wilson on May 14, 2015, Sacilowski reported that she was "urinating more than normal" and that she had "pain in her front lower abdomen" before urinating, and "pain while urinating," all of which she had been experiencing "for about a year" at that point.  Sacilowski's bladder leakage worsened over the course of 2016, occurring up to one to two times per day: Records from August 4, August 17, and September 15, 2016 show this.  They also show that her bladder injections had started on August 4, 2016, that she had three of these procedures over the course of six weeks, and that she was still on occasion unable to reach the bathroom in time for relief.

The record also includes multiple reports from Dr. Wilson, Sacilowski's treating physician, who coordinated her treatment with other physicians, such as neurologists for her migraines and urologists for her bladder issues.  The various medical reports from Dr. Wilson in the record also indicate that he reviewed and was familiar with Sacilowski's family, social, and medical history; medication list; allergy history; and problem list.

The record also contains Dr. Wilson's answers to four separate medical questionnaires from February 13, August 19, May 15, and November 14, 2014.  Though these fall before the Relevant

- 16 -

Time Period, they evince Sacilowski's progressively deteriorating condition and resultant inability to work.[5]  They indicate mild to significant functional limitations as early as February 2014, including but not limited to the following activities for which limitations persisted through all four questionnaires:  "standing," "walking," "sitting," "handling/feeling/manipulating," "ability to perform at a consistent pace," "ability to maintain concentration," and "ability to perform activities within a schedule and maintain regular attendance."  Dr. Wilson also opined in these forms as to Sacilowski's ability to "engage in employment, education, or skills training," finding that in February 2014 she could engage in such activity for "[less than] 10" hours per week and "[less than] 4" hours per day.  By November 2014, these numbers were down to "0-2" hours per week and per day.  And on September 1, 2016, Dr. Wilson completed a physical capacity questionnaire in which he made the following findings:  Sacilowski could sit for one to two hours and stand and walk up to 15 minutes each in an eight-hour day; Sacilowski would need to lie down for two to four hours in an eight-hour day; and Sacilowski would miss more than four days of

---

[5] The Commissioner contends that because "Dr. Wilson concluded that Sacilowski's symptoms had only existed at the severity indicated in his opinion since August 1, 2016," his opinion cannot support an award of benefits for the entire Relevant Time Period.  But Dr. Wilson's earlier answers to the 2014 medical questionnaires make clear that Sacilowski's condition was debilitating even before the Relevant Time Period, and deteriorating throughout it.

- 17 -

work a month.  According to this questionnaire, these "symptoms and limitations" applied as early as August 1, 2016.  And recall that the VE testified to the ALJ that regular absences of even once a month would likely preclude full-time competitive employment.

The Commissioner does not provide any evidence to rebut any of the foregoing.  The record contains no evidence to directly contradict Sacilowski's testimony about her ailments and their frequency and severity, nor the medical reports supporting them. The Commissioner argues that there is "conflicting evidence in the record regarding Sacilowski's migraines," and that "there is also evidence suggesting that Sacilowski's migraines were not disabling during the [Relevant Time Period]."  But the "evidence" he cites is unpersuasive.  He argues that "Sacilowski's physicians [] concluded in July 2015, March 2016, and August 2016 that Botox had reduced the frequency of her migraines," but does not provide any evidence that a reduction in frequency mitigated the severity of the migraines, nor their debilitating effects.  The Commissioner also claims that the "state agency physicians, who considered Sacilowski's impairments including migraines, found she could perform a range of light work and did not specify a need for absences due to migraines or other impairments."  However, and as the magistrate judge pointed out, there is no indication in the record that the state agency physicians were ever asked to even

consider Sacilowski's impairments' impact on absences. We therefore find that the Commissioner has provided no "contrary evidence," Seavey, 276 F.3d at 11, to directly rebut any of the multiple pieces of evidence that comprise the substantial and "overwhelming" evidence, id., of disability in this case. See, e.g., Gonzalez Maldonado v. Sec'y of Health & Human Servs., 996 F.2d 1209, *3 (1st Cir. 1993) ("[S]ince there are no contrary medical reports as to the severity of claimant's mental impairment, the ALJ's finding that there was no evidence to support allegations of a significant emotional illness in the relevant period is not supported by substantial evidence.")

And as to the bladder issues, the ALJ found the ailment to be "non-severe" based on opinions from the state agency physicians rendered on October 20, 2015 and January 6, 2016, before Sacilowski's bladder condition had significantly worsened, and ignored other medical reports, available in the record, supporting her progressively deteriorating bladder ailments. But even a finding of non-severity does not relieve an ALJ of his obligation to consider a non-severe impairment's impact on a claimant's overall medical condition. See Stephenson v. Halter, No. Civ. 00-391-M, 2001 WL 951580, at *2 (D.N.H. Aug. 20, 2001) (finding the ALJ required to "consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" (quoting

40 C.F.R. § 404.1523)); SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may -- when considered with limitations or restrictions due to other impairments -- be critical to the outcome of a claim."). Reviewing the record afresh as we do, we find that Sacilowski's bladder impairment would have exacerbated her overall and already-debilitated medical condition, further supplementing the "overwhelming" evidence of disability here. Seavey, 276 F.3d at 11.

The Commissioner also discredits Dr. Wilson's opinions, in particular the September 1, 2016 finding of absenteeism, claiming that it was disconnected from Sacilowski's migraine headaches and otherwise inconsistent with Dr. Wilson's determinations that certain of Sacilowski's medical conditions were "normal."[6] But the Commissioner provides no reason why such

---

[6] The Commissioner explains: "For example, in August 2015, the doctor observed that Sacilowski's strength, coordination, and gait were normal. Dr. Wilson also found in February 2016 that Sacilowski's neck and musculoskeletal range of motion, coordination, and reflexes were normal. Four months later, the doctor assessed that Sacilowski's neurological examination was grossly normal. Moreover, one month before he completed his

findings by Sacilowski's treating physician, combined with Dr. Wilson's previous absenteeism determinations from 2014, contradict his 2016 absenteeism finding.  For one, a claimant may have the capacity to engage in certain daily, "home activities," Garrison, 759 F.3d at 1016, but still be unable to function in a workplace environment.  See id. ("ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").  And Dr. Wilson's longtime familiarity with Sacilowski and her ailments allows us to find that his absenteeism determination reinforces the already-"overwhelming" evidence of disability in this case.  See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) ("The relevant legal standard for a claim filed before March 27, 2017 (as [Sacilowski's] was) is the rule that a treating physician's opinion is controlling if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'  And even if not deemed controlling, a treating physician's opinion is entitled to weight that reflects the physician's opportunity for direct and continual observation."

opinion, Dr. Wilson concluded that Sacilowski's gait appeared normal, and her neurological examination was grossly normal."

- 21 -

(quoting 20 C.F.R. § 416.927(c)(2)) (second alteration in original)).

Finally, the Commissioner disregarded "Sacilowski's own allegations [as] not enough to establish disability," but he gives us neither any evidence to directly rebut Sacilowski's testimony (which was corroborated by her husband), nor any reason to question its credibility, and so we take her statements as true. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (finding that an ALJ's decision to discredit testimony "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]"); Nguyen, 172 F.3d at 35-36; see also Garrison, 759 F.3d at 1019 ("[W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true." (quoting Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988)).

Having reviewed the full record, comprising the transcript of the ALJ hearing, the ALJ's decision, the full administrative record that includes employment and medical records

from 2013 through September 9, 2016, the transcript of the magistrate judge hearing, the magistrate judge's R&R, and the district court's orders, we find that the severity and frequency of Sacilowski's migraine headaches and bladder ailments would have caused her to be absent from work at least once a month during the Relevant Time Period, which, according to the VE's testimony, would have precluded full-time competitive employment.  We therefore find that there is "overwhelming" evidence in the record to support a finding of disability and an award of benefits, see Seavey, 276 F.3d at 11-12; see also Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001) ("[A] remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits."); Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) ("This court . . . [may] remand the case for an entry of an order awarding disability benefits where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."); Garrison, 759 F.3d at 1023, and so we **affirm** the district court's order.

Costs to Appellee.