Valley v. SSA                          CV-02-338-M    09/30/03

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Crystal Valley,
      Claimant

      v.                                      Civil No. 02-338-M
                                              Opinion No. 2003 DNH 165
Jo Anne B. Barnhart,
      Respondent


**O R D E R**


     Pursuant to 42 U.S.C. § 405(g), claimant, Crystal Valley,

moves to reverse the Commissioner's decision denying her

application for Supplemental Security Income payments under Title

XVI of the Social Security Act, 42 U.S.C. § 1382 (the Act).  The

Commissioner objects and moves for an order affirming her

decision.


**Factual Background**

I.   Procedural History.

     In February of 2000, claimant filed an application for

Supplemental Security Income payments under Title XVI of the Act,

alleging that on or before January 24, 1998, she became disabled

due to fibromyalgia, depression, anxiety, and attention deficit

disorder.  <u>See</u> Transcript at 95.  The Social Security Administration denied her application.

On October 9, 2001, claimant and her attorney appeared before an Administrative Law Judge (ALJ) who considered her claim <u>de</u> <u>novo</u>.  The ALJ issued his order on November 30, 2001, concluding that, although subject to some restrictions, claimant was capable of performing sedentary work and was not, therefore, "disabled" within the meaning of the Act.  On May 17, 2002, the Appeals Council denied claimant's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.

In response, claimant filed this timely action, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.  She then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 9).  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  Properly Supported Factual Findings by the ALJ
    are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1]  Moreover,

---

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

3

provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It

from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

4

is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II. The Parties' Respective Burdens.

An individual seeking Supplemental Security Income Benefits is disabled under the Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987);

5

Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national

economy that she can perform.  See <u>Vazquez v. Secretary of Health</u> <u>& Human Services</u>, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See <u>Hernandez v. Weinberger</u>, 493 F.2d 1120, 1123 (1st Cir. 1974); <u>Benko v. Schweiker</u>, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

    (1)   whether the claimant is engaged in substantial gainful activity;

    (2)   whether the claimant has a severe impairment;

    (3)   whether the impairment meets or equals a listed impairment;

    (4)   whether the impairment prevents the claimant from performing past relevant work; and

    (5)   whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 416.920.  Ultimately, a claimant is disabled only if her:

7

physical or mental impairment or impairments are of
such severity that [s]he is not only unable to do [her]
previous work but cannot, considering [her] age,
education, and work experience, engage in any other
kind of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which [s]he lives, or
whether a specific job vacancy exists for [her], or
whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's
motion to reverse and the Commissioner's motion to affirm the
ALJ's determination that claimant is not disabled.

## Discussion

I.   Background - The ALJ's Findings.

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory five-
step sequential evaluation process described in 20 C.F.R.
§416.920.  Accordingly, he first determined that claimant had not
been engaged in substantial gainful employment since January 24,
1998 (her alleged onset of disability).  Next, the ALJ concluded
that the medical evidence of record indicates that claimant
suffers from fibromyalgia - a condition which the ALJ found to be

8

"severe," as that term is used in the Act and pertinent federal regulations. He also noted that claimant has been diagnosed with depression and anxiety, but concluded that neither impairment was "severe."

Next, the ALJ assessed claimant's residual functional capacity ("RFC") and concluded that, notwithstanding the limitations caused by her fibromyalgia, she retained the ability to perform the exertional demands of sedentary work and that she did not suffer from any significant non-exertional limitations which might limit the range of work she can perform. Finally, the ALJ concluded that while claimant lacked the RFC to return to her former employment (which required her to lift more than ten pounds and stand for prolonged periods), she was capable of performing substantial gainful work which exists in the national economy.

## II. Claimant's Assertions of Error.

In her motion seeking an order reversing the decision of the Commissioner, claimant says the ALJ erred in concluding that she was not disabled by: (1) failing to properly weigh her subjective

complaints of pain, thereby erring in his assessment of claimant's credibility (and, presumably, his calculation of claimant's RFC); (2) finding that she did not have a "severe" mental impairment; and (3) relying exclusively upon the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2 (also known as the "Grid"), without the benefit of testimony from a vocational expert.

    A.    The ALJ's Credibility Determination
          and RFC Calculation.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain. See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996). When the claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain or side effects she alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit her ability to do basic work activities.

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by the treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual . . ..

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements.

Social Security Ruling ("SSR") 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996). Those factors include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any

11

measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms. Id. See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other medical professionals who have examined her and/or reviewed her medical records, and to consider the other relevant factors identified by the regulations and applicable case law. Part of his credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability." Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court. See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts") (citation omitted).

Here, in reaching the conclusion that claimant's testimony concerning the disabling nature of her impairments was not entirely credible, the ALJ considered, among other things, her daily activities and life style, findings made on physical examination of claimant, her use of and positive response to prescribed medications, and the "considerable discrepancy" between claimant's subjective complaints and the objective, clinical findings documented by her treating professionals. Transcript at 18. The ALJ also made the following observations:

> Despite chronic complaints, on examination, she has had good range of motion, normal strength and sensory examination. She had a normal neurological examination. It was recommended that she exercise and start a walking program but she failed to do so. She previously has reported a positive response to treatment but this was not acknowledged in her hearing testimony. She has not required any recent acute or in-patient treatment for her symptoms. Treatment records from various doctors have questioned her use/overuse of pain medication and other prescribed medication. As already noted, she is not fully compliant with treatment recommendations. At least one treating source noted she does not always appear for office visits as scheduled. The claimant also has a fairly extensive range of daily activities.

Transcript at 18. With regard to claimant's non-compliance with treatment recommendations, she does not, for example, wear her wrist splint as instructed. Compare transcript at 124

13

(instructing claimant to wear her splint "All the time."), <u>with</u> transcript at 28 (stating that she wears the splint only occasionally, depending on how her hand feels). Nor has she complied with her physician's recommendation that she begin a diet and exercise program (among other things, treating physicians have opined that claimant's weight and inactivity contribute to her joint and muscle discomfort). <u>Compare</u> transcript at 153-54 (Dr. Phillips' recommendations regarding a daily walking regimen as part of a program designed to address claimant's obesity, as well as the symptoms of her fibromyalgia) <u>with</u> transcript at 53 (stating that while she was once walking daily, claimant now takes a walk roughly once a week). Nor has claimant attended scheduled medical/counseling appointments regularly. <u>See, e.g.</u>, Transcript at 158. And, notwithstanding her numerous health complaints (including asthma and recurring sinusitis), claimant has not stopped smoking, as suggested by several treating physicians.

Perhaps most telling of all is the fact that claimant's own treating physician, Dr. Elizabeth Sanders, strongly implied that she believes claimant has a tendency to exaggerate the extent of

14

her disability. As the ALJ noted in his opinion, see transcript at 17, when asked whether she believed claimant was a "malingerer," Dr. Sanders wrote, "I am not sure - I believe she subjectively feels her disability is greater than I do." Transcript at 268. And, when asked to describe the nature, frequency, and severity of claimant's pain, Dr. Sanders wrote, "Subjectively, she will tell you 'severe and constant.' Impossible to get objective interpretation." Transcript at 269.

Accordingly, the ALJ concluded, "In light of the foregoing and the numerous inconsistencies in this record, the claimant's testimony cannot be fully credited," and while "claimant reasonably could be expected to have some limitations from her fibromyalgia," those limitations are not as substantial as she claims. Transcript at 18.

Ultimately, then, while the Commissioner concedes that claimant's fibromyalgia causes her some measure of pain and limitation, substantial evidence in the record supports the ALJ's conclusion that her impairment did not cause the degree of pain and limitation that she described. And, in light of claimant's

15

fairly substantial non-compliance with treatment recommendations, the ALJ was justified in concluding that her disability/ discomfort as a result of carpal tunnel syndrome was exaggerated. Finally, as discussed more fully below, the ALJ was justified in discounting claimant's complaints of anxiety and depression as well, given the several references in the record to claimant's positive response to her medications. See, e.g., Transcript at 31-32, 172, and 176. See also Transcript at 174 (Dr. Matthews' observation that, "There were no signs of depression or anxiety noted during the evaluation, and [claimant] often laughed, was talkative, and appeared at ease.") and 177 ("The prognosis for change of psychological symptoms with appropriate treatment is considered to be good. [Claimant's] treatment appears to be effective, given that she does not appear to be currently experiencing any anxiety or depressive symptoms.").

In light of the foregoing, the court cannot conclude that the ALJ erred in making his assessment of claimant's credibility or in determining that she retained the RFC to perform sedentary work.

B.    Claimant's Mental Impairment.

At step two of the five-step sequential analysis, claimant bears the burden of demonstrating that she has an impairment (or impairments) "which significantly limits [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c). Claimant asserts that the ALJ's determination that her depression and anxiety are "not severe" is not supported by substantial evidence in the record.  The court disagrees.

The inquiry that must be made at step two of the sequential analysis has been described as follows:

> Fundamental to the disability determination process is the statutory requirement that to be found disabled, an individual must have a medically determinable impairment "of such severity" that it precludes his or her engaging in any substantial gainful work.  A finding of ability to engage in [substantial gainful activity], therefore, may be justified on the basis of medical considerations alone when a medically determinable impairment(s) is found to be not severe. <u>An impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on the individual's physical or mental ability(ies) to perform basic work activities</u>.
>
> * * *
>
> The impairment severity requirement <u>cannot be satisfied</u> when medical evidence shows that the impairment(s) has

17

> a minimal effect on a person's ability(ies) to perform
> basic work activities, that is, when he or she has the
> abilities and aptitudes necessary to do most jobs.
> Examples of these are sitting, standing, walking,
> lifting, carrying, handling, reaching, pushing or
> pulling; seeing, hearing, and speaking; understanding,
> carry out, and remembering simple instructions; use
> judgment, responding appropriately to supervision,
> coworkers, and usual work situations; and dealing with
> changes in a routine work setting.

SSR 86-8, Titles II and XVI: The Sequential Evaluation Process, 1986 WL 68636 (1986) (emphasis supplied). See also SSR 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856 (1985).

In support of his conclusion that claimant failed to suffer from severe depression or anxiety, the ALJ made the following findings: (1) she has been treated for depression and anxiety and responded well; (2) she has no memory problems and is capable of caring for herself; (3) she has no apparent problems with attention and gets along well with others; (4) at the hearing, claimant testified that her treatment with the prescription medication Paxil has resulted in "100% improvement"; and (5) she sought mental health treatment only after having been ordered to do so by a state court (following an altercation with her

18

boyfriend).  Transcript at 15.  The ALJ also acknowledged the

report prepared by claimant's therapist, Denise Walderich, who

opined that claimant would have difficulty working on a sustained

basis.  However, as claimant concedes, Ms. Walderich is not an

"acceptable medical source" to provide evidence to establish an

impairment.  See Claimant's memorandum at 14 n.11.  See also 20

C.F.R. § 416.913(a).  Moreover, the ALJ correctly observed that

Ms. Walderich's opinion was based entirely upon claimant's

subjective complaints which, as noted above, the ALJ determined

were not entirely credible and likely exaggerated.

The ALJ also adequately discussed his reasons for

discounting the opinion of claimant's treating physician, Dr.

Elizabeth Sanders.  See Transcript at 16-17 (noting, among other

things, that Dr. Sander's opinion regarding claimant's ability to

perform work-related functions was not based primarily upon

medically acceptable clinical and laboratory diagnostic

techniques but, instead, upon claimant's subjective complaints).

See generally 20 C.F.R. § 416.927(d)(2) (discussing the

requirement that the ALJ "give good reasons in [his or her]

notice of determination for the weight [given to claimant's]

19

treating source's opinion."). See also SSR 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183 (July 2, 1996).

The most comprehensive psychological testing performed on claimant was done in March of 2000, by Loring Mathews, Ph.D., a licensed clinical psychologist. Among other things, Dr. Mathews observed: (1) "During the evaluation [claimant] was alert. Her level of responsiveness did not show obvious effects of pain, medications, or drugs. Her level of psychological distress appeared to be mild"; (2) "There were no signs of depression or anxiety noted during evaluation, and [claimant] often laughed, was talkative, and appeared at ease. [She] reported that her mood is much better since she began taking Paxil, and she wakes up in the morning in a good mood"; (3) "Evaluation of cognitive processes indicated that [claimant's] attention and concentration skills appeared within normal limits"; and (4) "[Claimant] reported that she could easily perform a job where she could sit down all day, and she would like to be a secretary or work with computers." Transcript at 171-77. Finally, with regard to

claimant's ability to function in a work environment, Dr. Matthews concluded:

> Overall given [claimant's] observed appropriate behavior and ability to understand, remember, and concentrate during the evaluation, she appears able to tolerate most stresses common to a work environment (e.g., decision making, attendance, schedules, and interaction with supervisors).

Transcript at 176. Moreover, the state agency psychologist who reviewed claimant's medical records failed to find any "medically determinable impairment" based upon claimant's alleged "anxiety related disorders." Transcript at 187.

Ultimately, based upon his review of claimant's medical records, the ALJ concluded that:

> The objective findings from the past six months of treatment are otherwise minimal. Those limitations that have been identified have been based on the claimant's subjective complaints which as discussed below cannot be fully credited. Indeed, given the past evidence of a positive response to medication and treatment and with the reported improvement in her relationship with her boyfriend, she should experience a positive and rapid response to treatment. Because the record demonstrates that the claimant previously has responded quite well to treatment and medication and because of the very limited objective or clinical support from her treatment which did not begin until April 2001, the undersigned finds that this record

21

fails to document the existence of a severe mental impairment or combination of mental impairments that has affected the claimant's functioning or would be expected to affect her functioning for a continuous 12 month period as required by the Social Security Act.

Transcript at 15-16. While there is some evidence in the record which suggests that claimant suffers (or has suffered) from mild depression and/or anxiety, the ALJ's conclusion that her mental impairment is "not severe" is certainly supported by substantial evidence and, therefore, must be affirmed.

C. The ALJ's Reliance on the Grid.

Finally, claimant says because "she has significant nonexertional impairments impacting on her functional capacity," claimant's memorandum at 27, the ALJ erred by relying exclusively on the Grid, without the benefit of testimony from a vocational expert. In particular, she points to the fact that she has, over the years, complained of, and/or been diagnosed with, the following conditions: depression, anxiety, post traumatic stress syndrome (PTSD), pain, obesity, asthma, fatigue, a wrist impairment, non-restorative sleep, ongoing stress, and drowsiness from the side effects of her medication. Claimant's memorandum at 28.

22

With regard to the Grid, the Court of Appeals for the First Circuit recently observed:

> "The Grid," as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid directs a conclusion as to whether the individual is or is not disabled. However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust) that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a framework to guide the decision.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citations and internal quotation marks omitted).

The purpose of the Grid is to "streamline" the process by which the Commissioner may satisfy his burden of proving, at step five of the sequential analysis, that jobs exist in the national economy that the claimant can perform. See Ortiz, 890 F.2d at 524. In short, it allows the Commissioner to meet that burden without hearing testimony by a vocational expert. But, because the Grid "is meant to reflect the potential occupational base remaining to a claimant in light of [her] strength limitations," Ortiz, 890 F.2d at 524, when a claimant suffers from

23

"nonexertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform." Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991)(emphasis supplied).

Nevertheless, the First Circuit has held that an ALJ may rely exclusively on the Grid to establish the existence of occupations in which the claimant can engage provided the claimant's non-exertional limitations do not impose a significant or more than marginal limitation on the range of work the claimant otherwise has the exertional capacity to perform. See Ortiz, 890 F.2d at 524. Only if the "occupational base is significantly limited by a nonexertional impairment," Heggarty, 947 F.2d at 996 (citation omitted), must the Commissioner look beyond the Grid to carry the burden of proving that there are other jobs a claimant can do. Under those circumstances, "[u]sually, testimony of a vocational expert is required." Id.

Here, the ALJ concluded that "claimant has no significant non-exertional limitations which narrow the range of work she can perform." Transcript at 19. At least as to claimant's assertion

24

that she suffers from severe depression and anxiety, the ALJ's decision is supported by substantial evidence, for the reasons previously discussed. With regard to claimant's remaining asserted non-exertional limitations (i.e., post traumatic stress syndrome (PTSD), pain, obesity, asthma, fatigue, a wrist impairment, non-restorative sleep, ongoing stress, and drowsiness), the ALJ plainly discounted those claims based upon his determination that claimant's testimony at the hearing (and, by extension, her subjective complaints to her treating sources) was, at best, exaggerated.

Moreover, the record contains little in the way of evidence from "medically acceptable clinical and laboratory diagnostic techniques" supportive of claimant's asserted non-exertional limitations. 20 C.F.R. § 416.908 (providing that "a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms"). Instead, the ALJ was presented with a record that consisted mainly of notes and records of treating physicians who were simply documenting and responding to

25

claimant's subjective complaints of pain, anxiety, and discomfort.

As noted above, despite her claims of various non-exertional impairments, claimant has failed to follow the treatment recommendations of several physicians (e.g., stop smoking, diet, exercise, use a wrist splint, etc.) and has a history of failing to attend scheduled medical appointments. Her asthma is well-controlled by medication; she testified her medications have substantially improved the symptoms of her depression, see, e.g., transcript at 31-32, 172; she testified that she has no memory problems, see transcript at 119 (a point confirmed by Dr. Matthews, see transcript at 175-76); she reported that Flexeril helps her sleep and "she wakes up feeling refreshed," transcript at 153; she made similar comments with regard to the efficacy of her Paxil, transcript at 172; and her wrist injury would, in light of her limited use of a prescribed splint, appear to be somewhat overstated.

In light of the ALJ's well-supported conclusion that claimant's testimony was not entirely credible, claimant's own

26

treating physician's belief that she overstates the severity of her symptoms (and that physician's inability to conclusively say whether claimant was a "malingerer"), claimant's failure to follow several recommended treatment regimens, as well as suggestions in several parts of the record that claimant exhibited either drug-seeking behavior or was "inappropriately" using prescribed medications (e.g., seeking refills prematurely), see, e.g., transcript at 151 and 158-59, the ALJ's conclusion that claimant did not suffer from "significant non-exertional limitations which narrow the range of work she can perform," transcript at 19, is well-supported and cannot be disturbed.

## Conclusion

The Commissioner concedes that claimant suffers from various ailments including severe fibromyalgia, obesity, mild asthma, and depression that appears to be fairly well-managed with medication. And, it is beyond doubt that those conditions, particularly in light of her difficult living situation, combine to make her life uncomfortable and more taxing. Nevertheless, having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the

27

court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the date of his decision. The ALJ's five-step sequential analysis, as well as his discussion of the record evidence, is thorough, well-reasoned, and his conclusions are well-supported. While there is certainly some evidence in the record supportive of claimant's assertion that she is disabled, because the ALJ's adverse decision is supported by substantial record evidence, it must be affirmed. See, e.g., Tsarelka, 842 F.2d at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied, and the Commissioner's motion to affirm her decision (document no. 11) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                             _____
                             Steven J. McAuliffe
                             United States District Judge

September 30, 2003

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.