**Charles HOYE, Plaintiff**

v.

**Kathleen SEBELIUS, Secretary of the U.S. Department of Health and Human Services, Defendant.**

**Civil Action No. 10–30018–KPN.**

United States District Court, D. Massachusetts.

March 31, 2011.

Marion Tenney Rosenau, Western Mass. Legal Services, Springfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO REVERSE and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE SECRETARY (Document Nos. 13 and 16) March 31, 2011*

NEIMAN, United States Magistrate Judge.

This case involves the denial of Medicare coverage to Charles Hoye ("Plaintiff") during a two-month period in early 2009 while he was at a skilled nursing facility following a hospital stay. Plaintiff has filed a motion to reverse the decision of the Secretary of Health and Human Services ("Defendant")—memorialized in a July 6, 2009 decision of an administrative law judge—which decision denied him full Medicare coverage during the dates in question. Defendant, in turn, has filed a motion to affirm.

The parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. For the reasons that follow, Plaintiff's motion will be allowed, but only to the extent he is seeking a remand. Concomitantly, Defendant's motion to affirm will be denied.

## I. BACKGROUND

Since the parties are well familiar with this case, only a brief background is required. On January 7, 2009, Plaintiff, a 78 year-old veteran, was admitted to Charlene Manor Extended Care Facility following hospitalizations resulting from a cardiac event and related blood clots. Although Defendant initially denied Plaintiff Medicare coverage twice during the first few weeks of his stay at Charlene Manor, he was eventually deemed covered through February 11, 2009. This appeal involves the period of time between February 12 and April 16, 2009 (except for April 6–8, 2009) while Plaintiff remained at Charlene Manor.[1]

On June 8 and 30, 2009, the parties' attorneys appeared before an administrative law judge (hereinafter "the ALJ"). During that two-day hearing, Plaintiff's counsel argued that certain skilled nursing facility ("SNF") benefit criteria had been met between February 12 and April 16, while Plaintiff remained at Charlene Manor, and that Medicare coverage should fully apply. Defendant's counsel, in contrast, argued that the SNF benefit criteria had *not* been completely met during that period of time. Both parties made reference to the applicable regulations, 42 C.F.R.

---

1. It appears that Plaintiff continued to remain at Charlene Manor through May 11, 2009, when he transferred to the Soldier's Home in Holyoke, Massachusetts.

§§ 409.30–409.36, particularly to sections 409.31 and 409.35.

The ALJ also received evidence during the hearing. Most notably, Plaintiff's attorney relied heavily on a statement provided by Dr. Adam Blacksin, the Medical Director at Charlene Manor, while Dr. Elliot Jankowski, Defendant's Associate Medical Director for Senior Products, testified directly. Plaintiff's daughter also answered a few questions, as did a Medicare Advantage Appeals Coordinator.

By the end of the second day of the hearing, Dr. Jankowski made a variety of concessions. For example, Dr. Jankowski conceded that, during the relevant time, Plaintiff was in need of "daily physical therapy" that was "skilled"—*i.e.*, "skilled rehabilitation services." He also acknowledged that Plaintiff was fully covered during three of the days (April 6–8) for "skilled nursing services." As for the other days, Dr. Jankowski agreed that Plaintiff was entitled to ongoing skilled therapy but, as particularly relevant here, only on an "outpatient" basis, not as an "inpatient" resident at Charlene Manor.

The ALJ issued his decision on July 6, 2009. His conclusion essentially tracked Dr. Jankowski's opinion and concessions:

> The Provider was correct in terminating SNF services provided to [Plaintiff] in accordance with his Medicare Part C plan after February 11, 2009. [Plaintiff] did, however, require continued physical therapy between February 12, 2009, and April 5, 2009, and between April [9], 2009, and April 16, 2009, but at an outpatient, not inpatient SNF level of care. The Plan conceded that [Plaintiff] required inpatient SNF care for the dates of service between April 6, 2009, and April 8, 2009, and these dates are reimbursable as medically necessary, but they are only reimbursable . . . as outpatient therapy services. [Plaintiff] is financially responsible for the denied services. The Plan is directed to process the claim accordingly.

(A.R. at 30.) Unsatisfied, Plaintiff appealed the ALJ's decision to the Medicare Appeals Council ("MAC"), which upheld the decision on November 18, 2009. Thereafter, Plaintiff filed this lawsuit and the parties, in due course, filed the cross-motions currently at issue. At oral argument, the court focused on the main issue raised by the parties' briefs, inpatient vs. outpatient care. That issue is addressed more fully below.

## II. DISCUSSION

Given the focus of oral argument, extended discussion in unnecessary. Rather, the court will quickly summarize the parties' main arguments and then engage in its own analysis. In the end, the court finds strength in Plaintiff's principle contention and, on that basis, will remand the case for further proceedings.

### A. The Parties' Arguments

It became clear at oral argument that Plaintiff's opening memorandum of law contains a variety of threads that are no longer at issue given the concessions Dr. Jankowski made at the administrative hearing. At the end of his memorandum, however, Plaintiff made the following central argument:

> [Defendant] failed to make two critical determinations that are required by the statute for the denial of coverage. Firstly, [Defendant] determined that the skilled services could have been provided on an outpatient basis without actually investigating whether the skilled services could be provided on an outpatient basis. Secondly, [Defendant] neglected to factually investigate a "practical matter" inquiry of the availability and feasibility of a more economical alternative to

inpatient care. Therefore, [Defendant]'s denial of coverage cannot be supported by substantial evidence.

(Doc. No. 14 (hereinafter "Pl.'s Brief") at 9.) This argument—inpatient vs. outpatient care—focuses on the critical regulation, 42 C.F.R. § 409.31(b), specifically subsection (3), which is quoted in the margin.[2]

Factually, Plaintiff now asserts that he "lived alone in his home, fifty miles away from his daughter," and "did not have another family member to depend on to assist him with transportation to an outpatient facility for skilled therapy." (*Id.* at 17.) Thus, Plaintiff continues, Defendant "never should have determined that an economical alternative [to inpatient services] was available and feasible." (*Id.*) It does not appear, however, that these "facts" made it into the administrative record.

Plaintiff also argues that the ALJ ought not have relied so heavily on Dr. Jankowski who "never met or examined" Plaintiff and, "therefore, lacked personal knowledge of [his] overall condition." (*Id.* at 18–19.) To be sure, Plaintiff does not go so far as to suggest that *Dr. Blacksin's* declaration should have been afforded "controlling weight." As Defendant notes, unlike with Social Security Disability Insurance benefits, "[t]here is no counterpart ... regulation in the Medicare area" which might "provid[e] that the treating physician's opinion is entitled to deference under certain circumstances." (Doc. No. 17 (hereinafter "Def.'s Brief") at 18.) Nonetheless, Plaintiff cites decisions in which courts, apparently, "have reversed the decision of the Secretary where the [ALJ] gave greater credit to the opinion of the non-examining doctor." (Pl.'s Brief at 18 (citing cases).)

Still, Defendant argues that "Plaintiff bears the burden of establishing entitlement to benefits" and, hence, "it was not up to [Defendant] to determine whether the skilled therapy services actually could have been provided on an outpatient basis and whether custodial care was available in a more economical setting, as Plaintiff contends." (Def.'s Brief at 15.) In addition, Defendant argues that Plaintiff's "extra-record allegations," *e.g.*, about his inability to return to his home, ought not be considered. (See *id.*)

In reply, Plaintiff returns to his central argument: "The [ALJ's] determination that skilled therapy could have been provided in an outpatient setting is not supported by substantial evidence." (Doc. No. 18 (hereinafter "Pl.'s Reply") at 4.) According to Plaintiff, the record is bare of any findings of fact as to the "practical matter" inquiry mentioned in 42 C.F.R. § 409.31(b)(3) and further described in 42 C.F.R. § 409.35 (which is quoted in rele-

---

2. **Level of care requirement.**
   . . . .
  (b) Specific conditions for meeting level of care requirements.
    (1) The beneficiary must require skilled nursing or skilled rehabilitation services, or both, on a daily basis.
    (2) Those services must be furnished for a condition—
    (i) For which the beneficiary received inpatient hospital or inpatient CAH services; or
    (ii) Which arose while the beneficiary was receiving care in a SNF or swing-bed hospital for a condition for which he or she received inpatient hospital or inpatient CAH services; or
    (iii) For which, for an M+C enrollee described in § 409.20(c)(4), a physician has determined that a direct admission to a SNF without an inpatient hospital or inpatient CAH stay would be medically appropriate.
    (3) *The daily skilled services must be ones that, as a practical matter, can only be provided in a SNF, on an inpatient basis.*
42 C.F.R. § 409.31(b) (emphasis added).

vant part in the margin).[3] Finally, Plaintiff cites a number of Connecticut cases which, apparently, indicate that it was up to Defendant to engage in all aspects of the practical matter inquiry. (Pl.'s Reply at 3.)

## B. *Analysis*

■■■ As Defendant notes, Plaintiff bears the ultimate burden of proving entitlement to Medicare coverage. *See Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir. 1995). Even so, the Secretary's decision denying coverage may be reversed or remanded if it is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or contrary to law. *See Seavey v. Barnhart,* 276 F.3d 1, 8 (1st Cir.2001), *and Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 144 (1st Cir. 1987) (both applying 42 U.S.C. § 405(g)). Here, as indicated, Plaintiff asserts that the Secretary's decision denying Medicare coverage for the two months in question was both unsupported by substantial evidence and contrary to law, particularly since the Secretary did not engage in a proper "practical matter" inquiry—as required by 42 C.F.R. §§ 409.31(b)(3) and 409.35—in determining that inpatient services were not required. The court agrees and, on that basis, will order a remand. Accordingly, the court finds it unnecessary to address Plaintiff's alternative argument that the opinion of his treating physician, Dr. Blanksin, was not given the deference it deserved.

The court begins with the regulations themselves. First, as noted *supra* (n. 2), the daily skilled services, to be fully covered, "must be ones that, as a practical matter, can only be provided in a SNF [skilled nursing facility], on an inpatient basis." 42 C.F.R. § 409.31(b)(3). Second, also as noted *supra* (n. 3), "[i]n making a 'practical matter' determination, ... consideration must be given to the patient's condition and to the availability and feasibility of using more economical alternative facilities and services." 42 C.F.R. § 409.35(a). Here, however, it appears that *no consideration* was given to the "availability and feasibility" of providing Plaintiff with daily SNF services on an outpatient basis. Thus a remand would appear to be in order.

To be sure, the regulations do not specifically define whose burden it is to demonstrate the "availability and feasibility" of outpatient alternatives. *Id.* But the clear thrust of the quoted language places that burden on the Secretary, not Plaintiff; since it is obviously the *Secretary* who makes the "determination" regarding the practical matter inquiry, it is relatively easy to find as well that "consideration must be given" *by the Secretary* to demonstrate the "availability and feasibility" of non-inpatient alternatives. *Id.*

**3. Criteria for "practical matter".**
(a) General considerations. In making a "practical matter" determination, as required by § 409.31(b)(3), consideration must be given to the patient's condition and to the availability and feasibility of using more economical alternative facilities and services.....
(b) Examples of circumstances that meet practical matter criteria—
(1) Beneficiary's condition. Inpatient care would be required "as a practical matter" if transporting the beneficiary to and from the nearest facility that furnishes the required daily skilled services would be an excessive physical hardship. (2) Economy and efficiency. Even if the beneficiary's condition does not preclude transportation, inpatient care might be more efficient and less costly if, for instance, the only alternative is daily transportation by ambulance.
42 C.F.R. § 409.35.

Here, however, the ALJ did not make any such demonstration. Rather, he simply relied on Dr. Jankowski who merely opined at the administrative hearing that certain services could be provided to Plaintiff on an outpatient basis but never analyzed the availability or feasibility of such alternatives. (See A.R. at 597–99, 605.) Plaintiff's attorney tried to explore this issue after Dr. Jankowski testified, but to no avail:

[ALJ]: ... The requirement is ... as I understand it, that it's daily skilled care required on an inpatient daily basis, so Dr. Jankowski's saying it doesn't have to be done on an inpatient basis.

[Plaintiff's Attorney]: Okay. If—well, yeah, I mean if the statute requires skilled rehabilitation—skilled rehab services on a daily basis, I believe that as a practical matter it can only be performed—

[ALJ]: Performed in an inpatient setting?

[Plaintiff's Attorney]: Yes, right. Okay. So—

[ALJ]: So I think that's the—

[Plaintiff's Attorney]:—I mean if you believe that that—

[ALJ]: That's the point of contention then with regard to the physical therapy.

[Plaintiff's Attorney]: Right. So—right, right, and there's another requirement, correct. That is under the regulations, but we do believe that this is care that as a practical matter could only have been performed at the—in the inpatient setting. That's given the medical condition that [Plaintiff] was in. He had this left-side hemiparesis and the chronic pain, the other underlying medical conditions, that this was therapy that as a practical matter or as a practical matter could only have been rendered at the skilled nursing facility.

(A.R. at 605–06.) Plaintiff's attorney also brought the matter to the attention of the MAC (A.R. at 8–10) but again was ignored (A.R. at 3–5).

It should be noted as well that the Medicare Benefit Policy Manual also addresses the necessary considerations in making a determination regarding whether skilled services can only be provided in a SNF on an inpatient basis. (See Def.'s Brief, Ex. 1.) It, too, implicitly places the burden on the Secretary's "intermediary," not the claimant, to raise these considerations in the first instance. (See *id.* Ch. 8, § 30.7 ("In determining whether the daily skilled care needed by an individual can, as a 'practical matter,' only be provided in an SNF on an inpatient basis, *the intermediary considers* the individual's physical condition and *the availability and feasibility of using more economical alternative facilities or services.*"), § 30.7.2 ("*If the intermediary determines* that an alternative setting is available to provide the needed care, *it considers* whether the use of the alternative setting would actually be more economical in the individual case."), § 30.7.3 ("In determining the practicality of using more economical care alternatives, *the intermediary considers* the patient's medical condition. If the use of those alternatives would adversely affect the patient's medical condition, *the intermediary concludes* that as a practical matter the daily skilled services can only be performed by a SNF on an inpatient basis.") (emphasis added).)

Finally, while not binding on this court, the cases cited by Plaintiff also indicate that the burden is squarely on Defendant to conduct a more thorough "practical matter" inquiry than was performed here. For example, the court in *Goodrich v. Bowen,* 1988 WL 235577 (D.Conn. May 31, 1988), noted that "the 'practical matter' criteria requires an *individual assessment*

of each claimant's overall condition and *actual investigation into the availability and feasibility of alternatives to inpatient SNF care."* *Id.,* at *5 (emphasis added). "It is not sufficient," the court continued, "for the *Secretary* to look at only one aspect of a claimant's care." *Id.* (emphasis added). Rather, *"[t]he Secretary must assess the need for this skilled service* along with the other services the claimant requires, both skilled and custodial, *and then arrive at a determination* of the practical matter inquiry." *Id.* (emphasis added) (remanding for further proceedings). *See also Wolinski v. Bowen,* 1987 WL 108992, at **5–6 (D.Conn. Feb. 26, 1987) (noting that determinations regarding " 'the availability and feasibility of using more economical alternative facilities and services' . . . should not be made on assumptions only"); *Mazzella v. Heckler,* 1985 WL 77596, at *7 (D.Conn. Aug. 19, 1985) (remanding where the administrative law judge "failed to develop a full and fair record on the issues posed . . . , *i.e.,* whether the services provided to the plaintiff were required to be given because she needed on a daily basis skilled nursing care or other skilled rehabilitation services, which as a practical matter could only be provided in a skilled nursing facility on an inpatient basis").

In short, the burden here to demonstrate the availability and feasibility of outpatient services, and to engage in the practical matter inquiry, was not Plaintiff's. Rather, as reflected in the regulations, the Medicare Benefit Policy Manual, and persuasive caselaw, it is a burden imposed on the Secretary, which, as it turns out, has not been borne in the case at bar. Accordingly, this court has little choice but to order a remand.

### III. CONCLUSION

For the reasons stated, Plaintiff's motion, to the extent is seeks a remand, is

hereby ALLOWED and Defendant's motion to affirm is hereby DENIED. The matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.