her future is murkier than in most places in America.

Do you care?

Richard CONNER, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of the Social Security Administration [1], Defendant.

Civil Action No. 12–10877–RBC.[2]

United States District Court, D. Massachusetts.

Nov. 25, 2013.

Roger J. Bertling, Legal Services Center, Jamaica Plain, MA, for Richard Conner, Plaintiff.

Thomas D. Ramsey, Office of the General Counsel, Social Security Administration, Boston, MA, for Social Security Administration, Interested Party.

Christine J. Wichers, United States Attorney's Office, Boston, MA, for Michael J. Astrue, Defendant.

---

1. On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration and so, pursuant to Fed.R.Civ.P. 25(d), has been substituted for Michael J. Astrue as the defendant in this action.

2. With the parties' consent, this case has been reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (# 24)

*MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR OR- DER REVERSING THE COMMIS- SIONER'S DECISION AND AWARDING BENEFITS (# 16) AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (# 25)*

COLLINGS, United States Magistrate Judge.

## I. Introduction

On May 15, 2012, the plaintiff Richard Conner ("Conner") filed a complaint (# 1) pursuant to 42 U.S.C. § 405(g) against the defendant, the Commissioner of the Social Security Administration ("the Commissioner"), appealing the partially favorable decision dated July 29, 2011 wherein the plaintiff was awarded Supplemental Security Income benefits with an onset date of February 20, 2011. (# 1) By his complaint, Conner seeks to have the onset date of his disability changed to July 4, 2009. (# 1) On August 10, 2012, the Commissioner filed an answer to the complaint (# 9) and four days later the administrative record of the social security proceedings (# 10) was submitted.

On November 5, 2012, Conner filed a Motion for an Order Reversing the Decision of the Commissioner (# 16) together with a memorandum of law in support of the motion (# 20). In turn, on December 20, 2012, the defendant filed a Motion for an Order Affirming the Decision of the Commissioner (# 25) along with a memorandum of law (# 26). A hearing on the cross-motions was held on April 23, 2013. (# 30) On October 18, 2013, the Court issued a Procedural Order (# 31) directing the plaintiff to file an affidavit detailing the testimony he would have provided at the administrative hearing had the ALJ not curtailed that testimony. Conner's affida-

vit (# 32) was timely filed on November 6, 2013. At this juncture, the motions stand ready for decision.

## II. Procedural Background

On October 21, 2009, Conner filed an application for supplemental security income alleging a disability onset date of July 4, 2009. (TR 18[3]) His application was denied both initially on March 26, 2010 (TR 80) and on reconsideration on October 21, 2010. (TR 86) On December 9, 2010, the plaintiff requested a hearing before an administrative law judge ("ALJ"). (TR 18) On July 19, 2011, Conner, who was represented by a law student under attorney supervision, appeared and testified at the hearing before the ALJ, as did an impartial vocational expert. (TR 18)

On July 29, 2011, the ALJ issued a partially favorable decision finding that Conner was disabled as of February 20, 2011. (TR 14–28) The ALJ's decision become final on March 15, 2012, when the Appeals Council denied the plaintiff's request for review. (TR 1–3)

## III. The ALJ's Decision

In his decision, the ALJ made the following findings: Conner has not engaged in substantial gainful activity since the alleged onset date (TR 20); since the alleged onset date, July 4, 2009, Conner has had the following severe impairments: degenerative disc disease, status post rotator cuff surgery, hepatitis C, depression and anxiety (TR 20); since July 4, 2009, Conner has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR 21); prior to February 20, 2011, the date he became disabled, Conner had the residual functional capacity to perform sedentary to light work except that he was

---

**3.** The abbreviation "TR" refers to the administrative record (# 10).

unable to engage in overhead reaching and he required the option to periodically alternate between sitting and standing, he was limited to performing simple one to two step tasks, he was only able to have minimal contact with co-workers and supervisors, and only casual momentary contact with the public (TR 22); beginning on February 20, 2011, Conner had further restrictions that allow him to engage in fine manipulation or fingering only on an occasional basis such that he had the residual functional capacity to perform sedentary work with the same additional exceptions previously noted (TR 26); since July 4, 2009, Conner has been unable to perform any past relevant work (TR 26); prior to the established disability onset date, Conner was a younger individual age 45–49 (TR 26); Conner has at least a high school education and is able to communicate in English (TR 26); beginning on February 20, 2011, Conner has not been able to transfer job skills to other occupations (TR 26); prior to February 20, 2011, considering Conner's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could have performed (TR 27); beginning February 20, 2011, considering Conner's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that he can perform (TR 28); and Conner was not disabled prior to February 20, 2011, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision, i.e., July 29, 2011 (TR 28).

While Conner agrees with the ultimate finding that he is disabled, he challenges that ALJ's decision with respect to the onset date of his disability. The plaintiff contends that the proper onset date of his disability is July 4, 2009, the day on which he attempted suicide. (# 16 at 8)

## IV. Discussion

At the outset, Conner asserts that the ALJ abused his discretion when he refused to permit the plaintiff to testify about his July 2009 drug overdose during the administrative hearing. Specifically, during Conner's examination by his legal representative, the following questioning and colloquy ensued:

Q. So, Mr. Conner, the record seems to indicate that you attempted to commit suicide on or about July 4, 2005 (sic), is that correct?

A. Yes.

Q. Can you talk briefly, sorta about the feelings or events that led up to that attempt?

ALJ: I'm not gonna have him decompensate you, sir. If there's a medical record that, that relates to that, which there is, that's what we will rely on. This is not the time to have somebody break down during a hearing.

ATTY: Okay.

ALJ: It's not fair to him.

ATTY: Okay, I understand.

TR 56–7.

Conner argues that, as a result of failing to allow his testimony about the overdose in July 2009, the ALJ made an improper credibility determination with respect to the plaintiff's mental impairments.

It is true that the ALJ discussed Conner's drug overdose in the context of making his credibility determination. Specifically, in his decision the ALJ wrote as follows:

The objective medical evidence does not support the claimant's subjective allegations of disabling symptoms. The claimant alleges an onset date of July 4, 2009. This date corresponds with the claimant being hospitalized following an overdose of narcotic pain medication. This event

occurred while the claimant was incarcerated in Rhode Island. Although at the time of this incident the claimant denied that it was a suicide attempt, several months later he claimed that he had been attempting suicide. The psychiatrist notes from the Rhode Island Department of Corrections state, however, that on July 14, 2009, when the claimant returned to prison from the hospital, he stated that he had not been attempting suicide on July 14, 2009. Moreover, the discharge report from the hospital does not include any mental impairment diagnosis or refer to this incident as suicide attempt (sic). Finally, a Mental Health Services progress note from the Rhode Island Department Corrections (sic), dated July 20, 2009, indicates that the claimant reported he was feeling extremely anxious and was having difficulty sleeping but again denied any suicidal ideations. In light of the claimant's repeated denials that he had attempted suicide, at the time of the July 4, 2009 incident, or that he was suicidal in July 2009, I find the claimant's subsequent allegations lack credibility.

TR 23 (citations omitted).

The real question, as posed in the Court's October 18, 2013 Electronic Procedural Order, is whether Conner was prejudiced by the ALJ's refusal to allow questions about the July 2009 overdose. Put another way, could Conner's testimony have potentially changed the ALJ's decision?

■ In his affidavit filed on November 6, 2013, Conner states that he "attempted to kill [him]self on July 4, 2009" by "intentionally swallow[ing] between 20 and 25 morphine pills." (# 32 ¶¶ 1, 2) According to the plaintiff, he "attempted to commit suicide because [he] was depressed." (# 32 ¶ 5) Prior to taking the morphine *pills,* Conner claims to have written "suicide notes to [his] daughter, [his] girlfriend, and a friend." (# 32 ¶ 6) When the plaintiff was released from the hospital and returned to the prison in Rhode Island, he "was put on psychiatric observation. All of [his] belongings were taken from [him], including [his] clothes. [He] was put in a cell alone and not allowed to be around other people, which made [him] feel even more depressed." (# 32 ¶ 7)

Perhaps most significantly for present purposes, Conner avers that:

Although on July 14, 2009, I told a prison investigator that the overdose was accidental, I only did so because I was afraid of what the prison would do to me if they knew I had attempted to kill myself. I did not want to be kept in solitary confinement.

(# 32 ¶ 18)

Had the plaintiff been permitted to testify during the administrative hearing as he did in his affidavit, the ALJ could well have viewed the inconsistency in the record as to whether the July 2009 overdose was accidental or intention in a different light. So, too, the ALJ's assessment of Conner's credibility *vis-a-vis* the onset date of his disabling symptoms could potentially change. In short, the plaintiff could well have been prejudiced by the ALJ's refusal to allow questions about the July 2009 overdose at the administrative hearing.

■ It is up to the ALJ to weigh and consider the conflicting evidence. However, in this case, the ALJ erred in cutting off Conner's testimony at the administrative hearing with the result that all of the relevant and material evidence was not before him.[4] The First Circuit has held

---

4. The Court notes that the ALJ's action in

cutting off Conner's testimony was done in an

that "[w]hen an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency." *Seavey v. Barnhart,* 276 F.3d 1, 12 (1 Cir., 2001). In light of all of the circumstances, this case must be remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings during which Conner shall be allowed to present his sworn testimony in one form or another fully and completely. *See Seavey,* 276 F.3d at 11 ("[I]f an essential factual issue has not been resolved, as here, and there is no clear entitlement to benefits, the court must remand for further proceedings." (footnote omitted)).

### V. Conclusion

For all of the reasons stated, it is ORDERED that the Plaintiff's Motion For Order Reversing The Commissioner's Decision And Awarding Benefits (# 16) be, and the same hereby is, ALLOWED to the extent that the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) and otherwise DENIED. It is FURTHER ORDERED that the Defendant's Motion To Affirm The Commissioner's Decision (# 25) be, and the same hereby is, DENIED. Judgment shall enter accordingly.

effort to prevent Conner from "decompensating" while testifying, which the Court infers he had done earlier in his testimony. Well-intentioned as the ALJ's action undoubtedly was, there clearly are other ways of eliciting the information which could have been employed. Perhaps a recess might have helped.

Having Conner submit sworn written testimony and written answers to any questions the ALJ might have had would have worked. But cutting off testimony on an issue which the ALJ found was critical to credibility was not appropriate.