**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 05-1883

LUIS A. PADILLA,

Plaintiff, Appellant,

v.

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U. S. Magistrate Judge]

---

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Luis M. Chaves Ghigliotty on brief for appellant.
H.S. Garcia, United States Attorney, and Dino Trubiano,
Special Assistant United States Attorney, on brief for appellee.

---

July 19, 2006

---

**Per Curiam**.    Claimant Luis A. Padilla appeals from a decision of the district court accepting the opinion and order of the magistrate judge affirming the Commissioner's denial of disability benefits under the Social Security Act.    We have carefully reviewed the briefs and the record, Rodriguez Pagan v. Secretary of Health & Human Services, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam), cert. denied, 484 U.S. 1012 (1988), and find that the Commissioner's decision is not supported by the substantial evidence.

Padilla was 45 years old when he filed his application for Social Security disability benefits in June 2000. His last job had ended in November 1996, when he injured his knee with a machete while working as a tree cutter. Before that, Padilla had worked for almost twenty years as a materials handler and group leader for Baxter HealthCare Corp. Pharmaceutical Co. Padilla claimed that he was unable to work because of hypertension, Type II diabetes, arthritis, the injury to his knee, and an adjustment order with depressed mood. Padilla's application was denied, as was his request for reconsideration. A hearing was held before an administrative law judge ("ALJ") in December 2001. Padilla waived his right to attend, but was represented by his attorney.

The seven-minute hearing consisted entirely of the testimony of the Commissioner's vocational expert in response to hypothetical questions posed by the ALJ. Although the vocational

expert testified that in his opinion, if the reports of Padilla's treating psychiatrist and physician were given "full credibility," Padilla is completely unable to "function vocationally," the ALJ discredited this testimony.

Instead, in reaching his decision that Padilla retained the residual functional capacity to perform "light work" under Rule 202.18 of the Medical-Vocational Guidelines ("the Grid"), 20 C.F.R. § 404, App. 2, Subpt. P, the ALJ apparently relied on the vocational expert's answer to a confusing compound hypothetical question, as well as the opinions and reports of the consulting physicians and psychologist which were based on an incomplete medical record. As a result, substantial evidence in the record regarding Padilla's physical and mental impairments was ignored.

In his first hypothetical question posed to the vocational expert, the ALJ directed the expert to assume that Padilla could perform "light work" -- with certain limitations apparently derived from the physical residual functional capacity ("RFC") assessment completed by a non-examining consulting physician -- and then asked whether such work existed in the national economy and whether Padilla could perform his past "heavy" work. The expert did not respond to the first portion of the ALJ's compound question, but did reply that in his opinion, Padilla is unable to perform "the job he did in the past." Perhaps attempting to alert the ALJ to the problem with the question as it was posed,

Padilla's counsel stipulated that the vocational expert would be able to enumerate a "significant number of examples of jobs that *under the proposed hypothesis* the claimant or any other person with that vocational profile" could perform (emphasis added).

The ALJ erroneously regarded this stipulation as an admission that Padilla could perform light work. The ALJ never asked the vocational expert whether, given any of the specific limitations described by the consulting physicians or psychologist, Padilla could perform light work. All that the ALJ asked was whether Padilla could perform his past work and, assuming that Padilla could perform light work, whether such jobs existed. Counsel's stipulation simply confirmed that *if* Padilla could perform light work, such jobs existed.

In his next question, the ALJ specifically referenced the fall 2001 mental rfc assessment prepared by Padilla's treating psychiatrist and asked the vocational expert whether, if the report were fully credited, Padilla could "perform any type of jobs that exist in the national economy." The expert answered that "[a] person with those limitations could not function in the industry of our country." The ALJ then asked the same question based on the fall 2001 physical assessment prepared by the physician treating Padilla for his rheumatoid arthritis. Again, the expert answered that "a person under those circumstances would not be able to function vocationally." The ALJ kept the record open for ten days

-4-

so that Padilla could submit his psychiatrist's progress notes, but the ALJ did not request the treating physician's progress notes. The psychiatrist's notes were not submitted within the time allowed.[1]

The ALJ found Padilla's claims of disabling physical and mental impairments not "credible." The ALJ based his decision on the opinions of the consulting physicians and psychologist, all of whom had examined Padilla before December 2000 or rendered their opinions based on the medical record as it existed in December 2000, thus precluding consideration of the physical and psychiatric assessments prepared by Padilla's treating psychiatrist and physician almost a full year later. The ALJ explained that he discredited Padilla's psychiatrist's assessment (and the vocational expert's opinion based on it) because of the missing progress notes, but he did not explain why he ignored Padilla's physician's assessment of his physical limitations and pain and the vocational expert's opinion based on that report. The ALJ ruled that the type and dosage of medications Padilla took were not indicative of "severe, chronic, and unrelenting pain," yet no such finding appears in the record and no medical expert testified at the hearing.

---

[1] The progress notes were later submitted to the Appeals Council, which entered an order making them part of the evidentiary record.

Because the ALJ discounted and ignored the treating physicians' reports and the corresponding testimony of the vocational expert, his findings are based entirely on the use of the Grid.  Exclusive reliance on the grid is not appropriate in mixed exertional/nonexertional cases.  Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524-25 (1st Cir. 1989) (per curiam).  We have also noted that "[p]ain can constitute a significant non-exertional impairment which precludes naked application of the Grid and requires use of a vocational expert." Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999) (per curiam) (collecting cases).

If a vocational expert's testimony is to have any probative value, the hypothetical questions posed to the expert must contain the relevant facts.  In Lizotte v. Secretary of Health & Human Services, 654 F.2d 127, 131 (1st Cir. 1981), for example, the various hypothetical questions posed to the vocational expert asked him to consider appellant's ability to perform under different assumptions, including restrictions precluding appellant from tolerating a regular eight-hour day on a sustained basis, significant restrictions in appellant's ability to concentrate and pay attention, and other restrictions.  In that case, the ALJ disregarded the opinions it determined were based on discredited evidence.  In this case, only three hypothetical questions were asked and answered, and each presents a different problem:  the

first question was constructed in such a way that it assumed the ultimate answer, thus preventing the vocational expert from providing his opinion regarding whether Padilla could perform light work under any set of assumptions; the ALJ decided to discredit the second question and answer because of missing progress notes that have since been made part of the record; and the ALJ simply, and without explanation, ignored the third question and answer.

As a result, the ALJ disregarded the most current medical information in the record and relied exclusively on the opinions and assessments of the consulting physicians and psychologist which, in turn, were based on an incomplete medical record. This fact counsels against assigning controlling weight to these opinions. Gordils v. Secretary of Health & Human Services, 921 F.2d 327, 330 (1sr Cir. 1990) (per curiam). Furthermore, there is no dispute in the record that in addition to osteoarthritis, Padilla suffers from rheumatoid arthritis, a progressive and degenerative disease affecting all of the joints of the body, for which there is no cure. One of the non-examining consulting physicians stated in December 2000 that Padilla's physical condition was "not severe at this time," apparently recognizing that his condition could change, yet the ALJ did not follow up on this issue or obtain a medical expert's opinion regarding its significance.

A similar problem attends the ALJ's decision to discredit Padilla's psychiatrist's mental RFC assessment, purportedly because of the lack of progress notes or explanation of the basis of the doctor's opinion in the record. The ALJ instead credited the mental RFC and Psychiatric Review Technique prepared by the non-examining consulting psychologist, which is even more conclusory and consisted entirely of checked boxes on the forms, without narrative or explanation, and with no mention of Padilla's suicide attempt or the "guarded" prognosis provided by the Commissioner's consulting psychiatrist. The opinion of Padilla's treating psychiatrist is not entitled to more weight simply because of her status as a treating source, Rodriguez Pagan v. Secretary of Health & Human Services, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam), cert. denied, 484 U.S. 1012 (1988), but rather because her opinion is consistent both with the record as a whole and with many of the factors listed in 20 C.F.R. § 404.1527(d).

Finally, the ALJ erred when he found that Padilla's hypertension is "under control." No such diagnosis appears anywhere in the record; rather, the record shows that despite the treatment he has received over the years, Padilla's blood pressure readings consistently remain in the hypertensive and pre-hypertensive range. On appeal, Padilla argues for the first time that his condition is cognizable as cardiovascular disease or is medically equivalent to a Listing Impairment under 20 C.F.R. Part

404, Subpart P, App. 1, § 400.  It is well-settled that this court will not consider issues not raised below.  Dupuis v. Secretary of Health & Human Services, 869 F.2d 622, 623 (1st Cir. 1989).

We vacate the judgment of the district court and direct the district court to remand the case to the Commissioner for further proceedings consistent with this opinion, including obtaining any expert medical evidence needed to illuminate the medical record.  We express no opinion as to the ultimate outcome of the case.

Vacated and remanded.