Nancy **BALLESTER–SALGADO**,
Plaintiff

v.

Michael J. **ASTRUE, Commissioner,
Social Security Administration,**
Defendant.

**C.A. No. 11–cv–30257–MAP.**

United States District Court,
D. Massachusetts.

Nov. 7, 2012.

Order Denying Reconsideration
Jan. 3, 2013.

---

Nancy Ballester–Salgado, Indian Orchard, MA, pro se.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR ORDER REVERSING DECISION OF COMMISSIONER AND DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION OF COMMISSIONER* (Dkt. Nos. 11 & 14)

PONSOR, District Judge.

## I. *INTRODUCTION*

This action seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security disability insurance benefits. Plaintiff applied for disability benefits on December 23, 2008, alleging disability since January 1, 2008, due to breast cancer, left breast lumpectomy, left arm lymphedema, arthritis, high blood pressure, and depression. Following two hearings, the Administrative Law Judge ("ALJ") found on April 5, 2011, that Plaintiff was not disabled and denied Plaintiff's claim (A.R. 18–42.), rejecting the determination by both of Plaintiff's treating physicians that Plaintiff was unable to work. The Appeals Council denied Plaintiff's request for review, thereby making the decision final. Plaintiff filed this complaint on November 14, 2011.

Plaintiff now moves to reverse or remand the order of the Commissioner (Dkt. No. 11), and Defendant moves for an order affirming the decision of the Commissioner (Dkt. No. 14). For the reasons stated below, Plaintiff's motion will be allowed, the decision of the ALJ will be reversed, and an award of benefits will be ordered. Defendant's motion will be denied correspondingly.

## II. *FACTS*

At the time of the ALJ's decision, Plaintiff was forty-six years old. She had grad-

uated from high school but did not read or write English. (A.R. 410.) Plaintiff is left-handed. (A.R. 468.)

### A. Physical Conditions.

Plaintiff underwent a lumpectomy on January 7, 2009, after a mammogram showed a mass in her left breast. (A.R. 425–27, 615–20, 636.) The lumpectomy showed infiltrating ductal carcinoma. (A.R. 428.) Plaintiff underwent chemotherapy from February 2009 through April 2009 (A.R. 555) and then radiation therapy from May 2009 through July 2009 (A.R. 553–4).

On July 12, 2010, Plaintiff reported ongoing discomfort in her left breast and slight swelling in her left arm to Dr. Grace Makari–Judson. Dr. Makari–Judson diagnosed Plaintiff with mild lymphedema in the left arm and breast. (A.R. 531–2.)

The record also reveals diagnoses of significant arthritis, asthma, and high blood pressure. (A.R. 700–1, 706.)

### B. Mental Condition.

A consulting psychologist, Dr. Douglas Williams, examined Plaintiff on May 11, 2009, and found indications of major depressive disorder with a guarded prognosis. (A.R. 472.)

### C. Evaluations.

On January 12, 2009, November 9, 2010, and December 8, 2010, Plaintiff's treating physician Dr. Hernandez Bem completed questionnaires about Plaintiff's health status. (A.R. 709–11, 720–728, 731–34.) He described Plaintiff's ability to sit, to stand or walk, to lift or carry, and to stoop or bend as very limited. (A.R. 709–710.) Furthermore, Plaintiff was limited in her activities of daily living by the restrictions to the use of her arm. (A.R. 710.) Her condition was chronic and would affect her ability to work for more than a year. (A.R. 723, 728.)

In his latest report, Bem stated that Plaintiff had muscle pain, depression, muscle weakness, chronic headaches, anxiety, and disturbed sleep. (A.R. 731.) These impairments would be expected to last at least one year and were partially affected by emotional factors including depression and anxiety. (A.R. 731–32.) Dr. Bem said that Plaintiff could sit for fifteen minutes and stand for fifteen minutes, and that she was not capable of working an eight-hour working day, for forty hours per week. (A.R. 732.) Indeed, Dr. Bem concluded that Plaintiff could not work at all. (*Id.*)

On February 17, 2011, Dr. Makari–Judson, Plaintiff's other treating physician, completed a questionnaire about Plaintiff's health status. She said that Plaintiff had left arm lymphedema and chronic breast and "auxiliary" pain. (A.R. 760.) These symptoms were expected to last at least twelve months. (*Id.*) She also found that Plaintiff suffered from depression and anxiety. (A.R. 761.) According to Dr. Makari–Judson, Plaintiff could not walk a city block without stopping, could sit for forty-five minutes, could stand for ten minutes, and was not capable of working an eight-hour day for forty hours per week. (*Id.*) She also concluded that Plaintiff was not capable of working at all. (*Id.*)

On October 2, 2009, consulting physician Dr. Daniel Dress examined Plaintiff. He indicated that she had polyarthralgias, asthma, and hypertension and had limitations as to heavy lifting or heavy exertion. (A.R. 499.)

On October 7, 2009, Dr. Erik P. Purins reviewed the evidence of record. Without examining her, he concluded that Plaintiff could perform light work with occasional climbing of ladder/rope/scaffolds, stooping, crouching, and crawling; occasional overhead reaching with the left arm; and

avoidance of extreme temperature changes and hazards. (A.R. 503–10.)

On June 8, 2009, Joseph Litchman, a state agency psychologist, reviewing the evidence of record without examining Plaintiff, concluded that Plaintiff had moderate major depression, could understand and remember one- and two-step tasks, and would be able to sustain attention, concentration, schedule, and pace for up to two hours at a time during an eight-hour day. (A.R. 489–91.)

### D. ALJ's Findings.

At Step One of the disability adjudicative process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 23, 2008, the date of her application for benefits. (A.R. 26.) At Step Two, the ALJ found that Plaintiff's status post left breast lumpectomy, left arm lymphedema, and depression were severe impairments. The ALJ found that Plaintiff's obesity, hypertension, and asthma were not severe impairments. (A.R. 27–8.) The ALJ also decided that Plaintiff's complaints of chronic back pain and knee pain were not medically determinable impairments because they were not supported by objective medical evidence. (A.R. 27–8.)

At Step Three, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairments. (A.R. 28.) The ALJ went on to conclude that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she would be limited to:

> lifting twenty pounds occasionally and ten pounds frequently ... sitting, standing and walking up to six hours out of an eight hour day ... unlimited pushing and pulling ... occasional climbing of ladders, ropes, scaffolds ... occasional overhead reaching with the left domi-

nant arm; avoidance of extreme temperature changes and hazards. . . .

(A.R. 29.) The ALJ further determined that Plaintiff could "understand, remember and carry out simple and detailed instructions [and could] concentrate for two hours at a time." (Id.) Based on this RFC, at Step Four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a timekeeper (A.R. 36.) and, as such, was not under a disability as defined in the Social Security Act since December 23, 2008, the date Plaintiff's application was filed. (A.R. 37.)

### III. DISCUSSION

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence because (1) the ALJ improperly gave little weight to the opinions of Plaintiff's treating physicians; (2) the ALJ did not incorporate the opinions of Plaintiff's treating physicians in posing hypothetical questions to the vocational expert; and (3) the ALJ erred in not specifically considering the side effects of Plaintiff's medications.

The record clearly reveals that the ALJ failed to give proper weight to Plaintiff's treating physicians. The court, as noted above, will therefore reverse the decision of the ALJ and order an award of benefits.

### A. Standard of Review.

■ Judicial review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir.2001). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the ALJ. See id. at 10. The Commissioner's findings "as to any fact, if supported by substantial

evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citations omitted). Accordingly, the court must affirm the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). This is true "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. *Treating and Consultative Physicians.*

Plaintiff first argues that the ALJ erred by not giving appropriate weight to the opinions of Plaintiff's treating physicians. Specifically, Plaintiff argues that the ALJ should have given greater weight to the opinions of Drs. Makari–Judson and Bem. Similarly, she claims that the ALJ should have incorporated the opinions of Makari–Judson and Bem in formulating questions to the vocational expert.

The ALJ is generally required to give more weight to the opinions of treating physicians than to other medical opinions. 20 C.F.R. § 404.1527(c)(2). The applicable regulation makes clear that an ALJ should give controlling weight to treating physicians' opinions if the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. *Id.*

#### 1. *Dr. Bem.*

The ALJ discounted Dr. Bem's opinions because: (1) she found no evidence that he had tested Plaintiff's physical abilities and Plaintiff's representative conceded as much at the hearing; (2) his opinions were inconsistent with Dr. Makari–Judson's recommendation that Plaintiff should attempt exercise; and (3) Dr. Bem did not provide treatment notes.

The ALJ's assertions about Dr. Bem's opinions are flatly unsupported in the record. First, Dr. Bem sent Plaintiff for several physical therapy evaluations, which documented her difficulty with movement. (A.R. 519–527.) Second, it is not true that Plaintiff's representative admitted that Dr. Bem had not tested Plaintiff's physical abilities. In reaching this conclusion, the ALJ appears to refer to the following colloquy:

ALJ: Can you tell me, since you are familiar with his medical records, where in his medical records does he have documentation where he has actually performed a physical examination where he has asked her to bend, lift, squat, carry items, as well as lift something overhand or do any kind of manual dexterity tests?

ATTY: There are, to my knowledge, and I can review, 22F is pretty extensive in terms of her consistent medical treatment. I am not aware where he is [sic] actually did the actual tests that you're referring to. However, he has examined her to the extent that, it is my opinion that he would be able to make those observations and include those in his source statement.

(A.R. 82–83).

This answer does not concede that Dr. Bem never examined Plaintiff's physical capabilities. Indeed, Plaintiff's treatment notes, based on the physical therapy Dr. Bem ordered, document Plaintiff's difficulty with back pain and arm movement. (A.R. 521.)

Finally, while the ALJ is correct that Dr. Makari–Judson recommended an attempt at exercise as a treatment for Plaintiff's movement and physical pain problems, this recommendation in no way undercuts Dr. Bem's findings. (A.R. 586.) Dr. Makari–Judson's recommendation was made in August 2009. (*Id.*) Plaintiff's problems exercising were well documented in her physical therapy notes as of February 2010. (A.R. 521.) Furthermore, there is no indication that Dr. Makari–Judson opined that Plaintiff was having success with exercise. She merely suggested that Plaintiff "try" to exercise in order to improve her endurance and limit fatigue. (A.R. 586.)

### 2. Dr. Makari–Judson.

■ The ALJ rejected Dr. Makari–Judson's opinions because she found that they were inconsistent and contrary to her instruction for Plaintiff to attempt exercising. (A.R. 33–34). Specifically, the ALJ concluded that:

- it was illogical for Makari–Judson to recommend exercise while concluding that Plaintiff could not engage in basic physical activities;

- it was inconsistent for Makari–Judson to answer that Plaintiff's symptoms were not affected by emotional factors while stating that depression and anxiety contributed to Plaintiff's physical problems;

- Makari–Judson's opinion that Plaintiff suffered from problems with her lower extremities was not documented in treatment records and was illogically based on Plaintiff's left arm issues;

- Makari–Judson's findings were not based on medically acceptable signs, symptoms, and or laboratory findings.

(A.R. 33–4.)

The ALJ's conclusions as to Dr. Makari–Judson's opinion are unsupported by the record. As noted above, Makari–Judson's instruction for Plaintiff to try exercise is in no way inconsistent with a later opinion that most movement was a problem for Plaintiff. Contrary to the ALJ's findings, Makari–Judson and her nurse practitioner did in fact document Plaintiff's problems with her lower extremities. Their treatment notes indicate that Plaintiff "has some discomfort in her legs and is being treated for arthritis," (A.R. 685), had back pain (A.R. 706), and had arthritis in the legs, knees, and back, (A.R. 582). Makari–Judson's treatment notes, contrary to the ALJ's conclusion that no medically significant examination was performed, indicate that she examined Plaintiff's upper and lower extremities (A.R. 594.) Makari–Judson's answer regarding the contribution of emotional problems to Plaintiff's condition appear to stem from the vagueness of the question itself, rather than any inconsistency on her part.

### 3. Vocational Expert.

■ An ALJ's hypothetical questions to a vocational expert must contain the relevant facts. *Padilla v. Barnhart,* 186 Fed. Appx. 19, 21 (1st Cir.2006); *see Lizotte v. Sec'y of Health and Human Servs.,* 654 F.2d 127, 131 (1st Cir.1981). Given that the ALJ incorrectly discredited Drs. Bem and Makari–Judson's opinions, it was improper not to include these opinions in the hypothetical posed to the vocational expert. *Padilla,* 186 Fed.Appx. at 21.

### C. Medication Side Effects.

■ Plaintiff's remaining argument is that the ALJ did not consider the side effects of medications she is taking. In

particular, Plaintiff complained of difficulty sleeping. (A.R. 89.) To the extent that her documented fatigue would affect her ability to work in the national economy, such evidence should have been considered by the ALJ.

## IV. *CONCLUSION*

For the foregoing reasons, Plaintiff's Motion To Reverse the Commissioner (Dkt. No. 11) is hereby ALLOWED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. No. 14) is hereby DENIED. The clerk will enter judgment for Plaintiff. Defendant is ordered to calculate an appropriate award of benefits, both retroactive (to the extent Plaintiff is entitled to them) and prospective. The case is remanded for further proceedings consistent with this decision.

It is So Ordered.

## *MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR RECONSIDERATION* (Dkt. No. 18)

On November 7, 2012, the court allowed Plaintiff's motion to reverse the decision of the Commissioner denying Plaintiff's application for Supplemental Security Income benefits (Dkt. No. 11), and it ordered an immediate award of benefits.[1] On November 16, 2012, Defendant moved to have the court reconsider this ruling and order a remand, rather than outright reversal. Plaintiff, who is pro se, has not opposed Defendant's motion.

▇▇▇ Defendant argues that the court erred when it reversed the Commissioner's decision and ordered an award of benefits. The court, according to Defendant, should

at most have merely ordered a remand of Plaintiff's claim for further consideration.

▇▇▇ The court is convinced, for the reasons set forth in the November 7, 2012 memorandum, that the record provided firm footing for outright reversal of the Commissioner's determination. The court recognizes, however, that reversal is justified only in "unusual" cases where "the proof of disability is overwhelming" or "the proof is very strong and there is no contrary evidence." *Seavey v. Barnhart,* 276 F.3d 1, 11 (1st Cir.2001). Except in glaring cases, the better practice is for the court to remand the case for further proceedings to permit the Commissioner to resolve the factual issues and make an entitlement determination. *Id.; Freeman v. Barnhart,* 274 F.3d 606, 609 (1st Cir. 2001) ("A remand is the proper remedy here because it would allow the Commissioner to fulfill his role of resolving conflicting evidence, a task which is not [the court's] to perform.").

Prudence suggests that this record, though powerful, may not present the compelling circumstances where outright reversal and an order awarding benefits is proper. In light of First Circuit authority, erring on the side of caution, and in the absence of any opposition from Plaintiff, the court will allow Defendant's Motion for Reconsideration and will order the case remanded, with a condition.

Plaintiff has been waiting a very long time for a proper resolution of her claim. She first filed her application in December 2008, over four years ago. With this in mind, the court will order the Assistant United States Attorney to report to the court every ninety days on the status of

---

1. The court correspondingly denied Defendant's Motion for an Order Affirming the Decision of the Commissioner. (Dkt. No. 14.)

Plaintiff's application until the matter is resolved.

For the foregoing reasons, Defendant's Motion for Reconsideration (Dkt. No. 18) is hereby ALLOWED. The court's earlier ruling is amended to remove the order requiring the Commissioner to make an immediate award of benefits. The case is hereby remanded to the Commissioner for further proceedings consistent with this decision. The Commissioner is ordered to report to the court, through counsel, no later than April 5, 2013, as to the status of proceedings on remand, and every ninety days thereafter until this matter is fully resolved.

It is So Ordered.